**STATE, Plaintiff-Appellee, v. JAFFRIN, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23782.   Decided July 11, 1956.

Ralph S. Locher, Director of Law, Bernard J. Conway, Chief Police Pros., Edward V. Cain, Asst. Police Pros., for plaintiff-appellee.
Sheldon L. Perry, A. L. Kearns, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal comes to this Court from a finding of guilty and judgment on a charge of contempt of court instituted at the direction of Judge John V. Corrigan of the Cleveland Municipal Court.

On September 26, 1955, Janice L. Strickland was found guilty before Judge Corrigan on a charge of reckless driving under Sec 9-1304 of the Codified Ordinances of the City of Cleveland and judgment entered of fifteen dollars costs and three days, days and costs suspended, one year probation "inactive."

On October 15, 1955, a little after nine p. m., Janice L. Strickland was driving the automobile, of one Benjamin W. Tefft, east on Carnegie Avenue and in attempting to make a left hand turn into East Ninth Street to the north, a collision between the automobile she was driving and a westbound automobile occurred and as a result Miss Strickland was given a traffic ticket for failure to yield the right of way. The ticket directed Miss Strickland to appear in Traffic Court October 24, 1955 at 9:00 A. M. After the arrest of Miss Strickland, it is the claim of the Committee of the Cuyahoga County Bar Association, appointed by

the court to assist the City Prosecutor in the prosecution of this action (Judge Corrigan, who appointed the Committee after instituting this proceeding also presided at the hearing), that she and Tefft went to the Zanzibar Night Club, operated by Helen Joanne Jaffrin, for help because of her arrest. Miss Strickland had been an employee at the Zanzibar for a few days in the early part of October. It is claimed that when Miss Strickland was before Judge Corrigan on September 26th, he had told her that if again arrested, she would be required to serve days in jail. When Miss Strickland and Mr. Tefft went to the Zanzibar and after an explanation of the situation to Miss Jaffrin, she told them that it would cost $100 to fix the charge. After an attempt to raise $100 failed, other arrangements were made in that Tefft made out a check for $100 which was given to Miss Jaffrin, together with the title to his automobile and V. F. W. Membership Card, all of which was returned on October 18th when he claims to have delivered five twenty dollar bills to Miss Jaffrin under the agreement. Miss Strickland did not appear on the day set for the hearing in the Cleveland Municipal Court and a capias was issued for her arrest. On the eighteenth of November, 1955, she appeared in court, having been advised a warrant had been issued for her arrest and after going to Akron to borrow $50 for bail from her father and mother. Upon this occasion the case was passed to the 29th of November. On November 29th, in explaining her failure to come to court as directed by the arrest ticket, she said she had paid $100 to fix the case and gave the name of Miss Jaffrin as the person who received the money for that purpose. During the night of November 29th, Judge Corrigan, by telephone, ordered the arrest of Miss Jaffrin without a filed charge, the arrest was said to be for contempt of court. She was released on a five hundred dollar appearance bond during the night, was booked on the court calendar on November 30th for contempt of court and was present in court as required by the bond. When she was called before the court, her counsel asked for a continuance. Thereupon, the following took place, according to Judge Corrigan in his testimony before Chief Justice Silbert of the Common Pleas Court, on the motion to disqualify Judge Corrigan from presiding over the contempt hearing on the ground of prejudice:

"She stepped forward with Mr. Sheldon Perry, who is present here today. He walked up to the bench and said: 'Your Honor, we are entering a plea of not guilty.' And I said, 'there are no charges here. There is nothing to enter a plea of not guilty to.' And he said: 'Well, I want a continuance so—I just got into this matter. I want a continuance so I can inquire into this matter,' and I then said that 'There will not be two minutes' continuance in this case, because there are no papers, and this court really wants to ask this woman some questions relative to some accusations that were made against her in this open court yesterday afternoon,' and he then—there was some more conversation and when I just indicated to him I only wanted to ask her questions here and now and not later, he then indicated that he was withdrawing from the case, and with that he walked away from the bench.'

"You considered that there was no charge against this woman at all, is that right?

"I advised him, as I later advised her, that this court was interested in asking this woman some questions relative to accusations that had been made the previous afternoon in my court room.

"Judge, what else was done there on the 30th? What conversation, if any, did you have with Helen Joanne Jaffrin?

"Well, upon the—when counsel withdrew I then said: 'I want to ask you some questions. First, I want you to be sworn. Raise your right hand and be sworn.' And she said: 'I refuse to answer any questions. I am not going to do anything until I have an attorney.' I merely insisted that 'I want to ask you some questions relative to the accusations that were made in this court room yesterday.' But she again said something that she wasn't going to answer. She didn't have to answer.

"And then what did you do, if anything?

"When she refused to answer, and refused to be sworn, I then instructed—turned to my bailiff—to the bailiff and to the clerks to my right and said 'Lock her up.' "

The defendant was then locked in jail even though she had given an appearance bond after arrest upon the verbal direction of the Judge and in spite of the fact that the court said there were no charges pending against her. A writ of habeas corpus was immediately filed in the Common Pleas Court and set for hearing. Upon trial, the court denied the writ on condition that charges be filed. Thereupon the following affidavit was filed (November 30, 1955) in the Cleveland Municipal Court:

"Now comes BERNARD J. CONWAY, and being first duly sworn, says that on or about the 15th day of October, 1955, one HELEN JAFFRIN did unlawfully do acts calculated to impede, embarrass or obstruct the Cleveland Municipal Court in the administration of justice, in this that for and in consideration of the sum of One Hundred Dollars ($100.00) paid to her on behalf of JANICE STRICKLAND, the said HELEN JAFFRIN did then and there cause acts to be done to change the entry in the docket of the Cleveland Municipal Court, Criminal Branch, and tried to procure the disposal of a criminal case therein pending, in which the City of Cleveland is Plaintiff, and JANICE STRICKLAND, Defendant.

"WHEREFORE, rule is asked against the said HELEN JAFFRIN, that she appear and answer why she should not be punished as in contempt of this Court."

When the case was called for trial on December 13, 1955, after the defendant's request by motion to disqualify Judge Corrigan on the ground of prejudice, filed in the Common Pleas Court of Cuyahoga County, had been overruled, the defendant asked the court to rule on a motion to quash the affidavit, said motion having been filed December 9, 1955. Prior to this request, the court made the following statement:

"It is now 2:50 and we are still not into the hearing of the case. And I think at this time it might be good on the part of the Court to review a little bit of what has transpired.

"As the result of some allegations which were made in court against the accused, this Court summoned the accused to appear before it. The accused did appear on the morning of November 30th, at which time she refused to answer any questions, at which time she refused to even be

sworn to answer any questions in connection with the Court's inquiry into these charges of an irregularity and an attempted fix, and the charges concerning an alteration to the Court's docket, and concerning the files that were missing.

"Upon the refusal of the accused to answer any of the Court's questions: upon the refusal of the accused to even be sworn, the Court ordered her taken from the courtroom and locked up. Counsel for the accused immediately filed a writ of habeas corpus, which was secured the same day, November 30th, in the Court of Common Pleas, before Judge Donald F. Lybarger.

"Said writ of habeas corpus was denied by Judge Lybarger, and at that hearing on the writ of habeas corpus, this Court was represented at that time, as it has been throughout the matter, by the Cleveland Police Prosecutor of the City of Cleveland, Bernard J. Conway, who agreed with Judge Lybarger that certain charges in writing would be prepared, would be given to this accused, and the case would be set for hearing.

"In accordance with the agreement made before Judge Lybarger, certain information was reduced to writing, and that said writing was presented to Sheldon Perry, representing the accused, Helen Jaffrin.

"The Court would like to point out that the Court here is dealing with a case of summary contempt; that the Court was under no obligation to present written charges of any kind. However, the Court has presented such written charges, and is proceeding on said written charges today. But the Court wants to make it amply clear that we are dealing here with a case of summary contempt; that since some charges have been reduced to writing in this matter, the Court is extending to counsel for the defendant, or the accused, and to counsel for the State of Ohio, as well as the Committee from the Bar Association, the right to fully inquire into all facts, into all evidence which may be presented from this witness stand."

The ruling on the motion to quash was then reserved until the testimony was in as was the ruling on a demurrer which was then presented verbally with a request for leave to file such a pleading. At the conclusion of the hearing, the motion to quash and demurrer were overruled, the defendant found guilty and sentenced to pay a fine of $500.00, and serve ten days in jail. The defendant claims the following errors:

"1. That the Court of Common Pleas should have sustained the Affidavit and Motion of the defendant to disqualify the Honorable Judge John V. Corrigan for the reason that said Judge John V. Corrigan was prejudiced and could not grant this defendant a fair and impartial trial.

"2. That the said Honorable Judge John V. Corrigan erred in not disqualifying himself from acting as the trial judge in said matter by reason of his personal interest and prejudice against this defendant.

"3. That the verdict and judgment of the court was contrary to the manifest weight of the evidence and contrary to law.

"4. That the court erred in the admission of evidence offered by the State of Ohio and duly objected and excepted to by the defendant.

"5. That the court erred in refusing to permit defendant to introduce evidence offered by her and pertinent to the issues in the cause.

"6. That the court erred in overruling the Motion of the defendant for a new trial.

"7. That the court erred in overruling the Demurrer of the defendant to the introduction of evidence in due season made.

"8. That the court erred in overruling defendant's Motion to Quash the Affidavit filed against her.

"9. That the court erred in permitting a Committee of the Cuyahoga County Bar Association to assume and act as prosecutors in said matter in place and stead of the duly constituted prosecutors and/or Assistant Law Directors of the City of Cleveland.

"10. That the court denied to the defendant her constitutional right to due process of law.

"11. Other errors appearing on the face of the record and duly objected and excepted to by the defendant."

Sec. 2705.01 R. C. provides:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

Sec. 2705.02 R. C. provides:

"A person guilty of any of the following acts may be punished as for a contempt:

(A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer;

(B) Misbehavior of an officer of the court in the performance of his official duties, or in his official transactions;

(C) A failure to obey a subpoena duly served, or a refusal to be sworn or to answer as a witness, when lawfully required;

(D) The rescue, or attempted rescue, of a person or of property in the custody of an officer by virtue of an order or process of court held by him;

(E) A failure upon the part of a person recognized to appear as a witness in a court to appear in compliance with the terms of his recognizance."

From the nature or character of the charges preferred against the defendant in this case, it is clear that the prosecution could not proceed under the provisions of §2705.01, supra, R. C., as for summary contempt. There is no claim that an act had been committed in violation of an order of the court or that a contemptuous act was committed in the court's presence (actual or constructive). The charge of contempt here encompassed interference with the judicial process of such a character as to bring the court into disrepute by acts committed without the knowledge of the court and, therefore, an indirect contempt. The court was in error in saying the proceeding was one in summary contempt. However, before hearing, written charges had been filed as required by §2705.03 R. C.

In Dangel on Contempt, page 7, para 14, it is said:

"Indirect contempts consist of all contemptuous acts which occur

out of the presence of the court, and of which the court itself has no personal official knkowledge. * * * An indirect contempt includes all such acts, when the court is not sitting, tending to obstruct, embarrass, or prevent due administration of justice."

This proceeding is criminal in its nature and one charged with criminal contempt is entitled to the constitutional guarantees provided for those charged with crime. In Dangel on Contempt, page 3, para, 6, it is said:

"Contempt of court, whether direct or constructive, which makes an attack on the integrity of the court or on its officers, which attack hinders and delays the operation of the court in the trial of a pending case, or which act is in disrespect of the court, or tends to obstruct the administration of justice, or which tends to bring the court into disrepute, is criminal contempt, and is subject to punishment."
and on page 71, para, 161, the author says:

"Contempt proceedings are sui generis (in their own class) because they are not hedged about with all the safeguards provided in the Bill of Rights for protecting one accused of ordinary crime from the danger of injurious conviction. But in criminal contempts, as in criminal cases, the presumption of innocence exists. Proof of guilt must be beyond reasonable doubt and the defendant may not be compelled to be a witness against himself."

Michaelson v. United States, 266 U. S. 42 at 66; Root v. MacDonald, 260 Mass. 344, at 365; Hayes v. Hayes, 11 O. O. 10. (See also para. 166 page 76, Dangel on Contempt.)

In the trial of an indirect or constructive contempt action, due process requires the accused be advised of the charges in writing with a reasonable opportunity to meet them by way of defense or explanation. (See para. 466, page 209 Dangel on Contempt.) In the case of Post v. State, 14 C. C. 111, the first paragraph of the syllabus provides:

"When the transactions constituting an alleged contempt of court do not come within the personal cognizance of the court through his own senses, the better practice is, to require an information to be filed by a proper representative of the state, and permit the accused to file an answer to the charge made against him, and that all facts not within the personal knowledge of the court, should be established in open court upon the sworn testimony of witnesses, or other competent evidence, in the ordinary manner of other judicial investigations."

Having in mind that criminal contempt as here charged against the defendant, is prosecuted to uphold and protect the judicial processes from being brought into disrepute (and not for the purpose of upholding the reputation of the Judge as he [Judge Corrigan] erroneously stated when testifying before Judge Silbert), we must examine the record to determine whether the defendant has here been afforded due process.

The defendant was clearly within her rights to refuse to give testimony when ordered to do so as a preliminary step in this proceeding on November 30th, either under oath or otherwise. At the time of this hearing this defendant was not called as a witness in the case of City of Cleveland v. Strickland, the court indicating that it was investigating the charge that she had received $100.00 to "fix" the second

584

Strickland case. Until written charges had been filed and a reasonable time afforded to answer, the court was without power to proceed to try such charge and even after proper charges were filed, the defendant could not be compelled to be a witness against herself in the case. (**Art. 1, Sec. 10 of the Constitution of Ohio.**) However, the filing of written charges and the passing of the trial to a future day eliminated any prejudice suffered by the defendant because of these errors in procedure.

Before trial, the defendant filed a motion to quash the affidavit above quoted in full and sought leave to file a written demurrer which was never done. A ruling on these pleadings was postponed until the conclusion of the taking of the evidence in the case. The grounds for the motion to quash were that the specifications in the written charges, which the state claimed to constitute contempt, did not come within any of the classifications set forth in §2705.02 R. C., supra. The charges in the affidavit filed (supra) are:

"That the defendant did unlawfully do acts calculated to impede, embarrass or obstruct the Cleveland Municipal Court in the administration of justice in that for a consideration of $100 paid to her on behalf of Janice Strickland, she

"(First), then and there caused acts to be done to change the entry in the docket of the Cleveland Municipal Court, Criminal Branch.

"(Second), try to procure the disposal of a criminal case then pending in which the City of Cleveland was plaintiff and Janice Strickland was defendant."

Whether these specifications come within any of the acts punishable as and for contempt within the statute (§2705.02 R. C.) is of no consequence. **Section 14, page 103 of Vol. Eleven, O. Jur. (2nd)**, in the article dealing with contempt, in connection with this question, says:

"Certain acts constituting contempt are enumerated in the Code, which particular acts are discussed in various parts of this division of the article; but the language of the statute is not exclusive and its terms do not place any limitation upon the court's power to extend and expand the legislative rule to other acts of either similar or dissimilar nature. If the court has inherent power to punish the contempts summarily, it must by the same token have the power to determine the kind and character of conduct which will constitute contempt even when not expressly provided for in the statute."

See also: **State, ex rel Turner v. Albin, 118 Oh St 527; Hale v. State, 55 Oh St 210.**

The evidence as to the change or alteration of records tends to show that the file (not mentioned in the charge or affidavit) in the case of City of Cleveland v. Strickland, heard and disposed of by the court on September 26, 1955, was missing and the words written on the court's calendar for September 26, 1955, after the name Janice Strickland, "one year probation inactive," which was also after the entry of the plea of guilty and sentence, had a line drawn over the writing. This is the case hereinabove referred to in which Judge Corrigan had told the defendant that if she was brought in again on a traffic violation, she would be required to serve days. The record shows that this case was fully concluded on September 26th, had been properly journalized on the

journal of the court so that any notation on the court's calendar or loss of the files themselves (which were found misfiled in the Clerk's Office on November 30th, after a diligent search) would not have the slightest legal significance. In any event, there is not a syllable of evidence in the record that connects this defendant with any change of records or loss of files and for that reason, the charge of contempt based on this claim must be dismissed.

The second charge of contemptuous conduct, as set forth in the affidavit filed November 30th, has to do with the claim that the defendant, after being fully informed that Janice Strickland had been arrested for a traffic violation and being solicited for help so that Janice Strickland could avoid the necessity of a court appearance and trial on the second traffic charge because of her prior traffic violation and the possibility of serving a jail sentence, alleged that the defendant agreed to "fix" the case, saying it would cost one hundred dollars. It is also alleged that the defendant was tendered payment and that she received $100 on October 18, 1955, for the purpose of disposing of or "fixing" such traffic charge. As a result of this promise of unlawful help, Janice Strickland did not appear in traffic court as directed by the arresting officer on the arrest ticket. A capias was issued for her arrest and she, on November 18th, on previously being informed that a warrant had been issued for her arrest, submitted to the jurisdiction of the court and the case was passed to November 29th for trial, at which time she made full disclosure of the reason she did not comply with the order to attend traffic court as directed on the arrest ticket. The defendant categorically denies being implicated in the transaction. Can it be said, if the facts are established by proof beyond reasonable doubt as contended by the state, that the defendant attempted to sell to her benefit immunity from the judicial process, and as a result, the court was compelled to put in motion extraordinary means of bringing the person arrested before the court for trial, that the court is powerless to punish such wrongful conduct as and for contempt of court? We think not. What could be more inimical to the cause of justice than the private sale of immunity from law enforcement? The taking of money in payment for a promise to "fix" a traffic arrest so that without appearance or trial one charged with such offense can avoid punishment is an act seriously challenging the dignity of the court and an affront to its judicial prerogatives. It despoils the integrity of the judicial processes and shows a wicked design to destroy, if not to wholly obstruct the administration of justice and brings the court into disrepute. If such facts, as claimed by the state, are properly established without showing any further act in furtherance of such unlawful conspiracy, enough has been established to make out a clear case of constructive or indirect contempt of the court in which the traffic prosecution was pending.

It is within the inherent power of the court to protect its processes against wrongdoing and to punish as and for contempt those guilty of such unlawful conduct. As has been indicated, some irregularities crept into the procedure, most of which have been pointed out, but we hold

that the defendant was not prejudiced thereby and in our opinion, substantial justice has been done.

We find that there is sufficient credible evidence to justify the court in finding the defendant guilty of contempt of court as charged in the second part of the affidavit.

Judgment affirmed.

Exceptions. Order see journal.

KOVACHY, PJ, HURD, J, concur.