STATE, PLAINTIFF-APPELLEE, *v.* TREON, DEFENDANT-APPELLANT.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 26159.   Decided February 21, 1963.

230

*Mr. Richard Matia*, chief police prosecutor, and *Mr. Edward Cain*, assistant police prosecutor, for plaintiff-appellee.

*Messrs. Baker, Hostetler & Patterson, Mr. Russell E. Leasure*, of counsel, for defendant-appellant.

Aᴇᴛʟ, J.  This is an appeal on questions of law from a judgment and sentence for summary contempt.  The appellant, hereinafter called the defendant, was found guilty of summary contempt by a Judge of the Municipal Court of Cleveland.  The court imposed sentence which was suspended.  The defendant prosecutes his appeal and sets forth eight assignments of error.

From the bill of exceptions, we find the facts to be substantially as follows.

It came to the attention of a newspaper reporter for the Cleveland Plain Dealer, other than the defendant, that someone might be influencing the handling or outcome of traffic tickets once they were issued, and said newspaper reporter passed this information on to the members of the Cleveland Police Department. In order to institute and conduct an investigation, certain members of the Police Department, including the late Traffic Commissioner, James P. Halloran, authorized and directed the issuance of two traffic tickets to defendant, who is also a reporter for the Cleveland Plain Dealer, charging him with certain nonexistent traffic offenses—with the understanding that defendant would attempt to get said tickets "fixed," or otherwise taken care of, by the person suspected. The defendant's cooperation with the police authorities was approved by his superiors at the Cleveland Plain Dealer. The defendant then took the tickets to the person suspected, paid him $27.00, gave him the tickets, and was told to forget about them; thereafter, defendant reported these events to the police officers. These two traffic tickets were accepted by the defendant and over his signature promised to appear in court on the 14th day of May, 1962.

On May 14, 1962, the defendant appeared in court and was informed by the bailiff that the two cases had been continued at the request of a "Mr. Arnold" who called and requested the continuance. The journal entry in Case No. 796,505 and Case No. 796,506, which were the permanent file numbers given to these cases, shows that both cases were continued to May 23, 1962. On May 23, 1962, the defendant appeared in open court in the Municipal Court of the City of Cleveland, Ohio, Criminal Branch, before Judge Theodore Williams, to answer to charges against him contained in Cases Nos. 796,505 and 796,506, in said court. The charges preferred against the defendant in these traffic tickets consisted of a speed violation contrary to Section 9.1306 of the Traffic Ordinances of the City of Cleveland, Ohio. The other contained a citation that he operated a motor vehicle without an operator's license in violation of Section 9.3109 of the Traffic Ordinances of said city. There was no executed affidavit charging such offenses on file in either case on May

23rd or at any other time. The unsworn citations on file on May 23, 1962, were signed by a police officer and contained such statements. The defendant was not represented by counsel at this hearing. He was asked for a plea and he entered a plea of not guilty to each charge. No witnesses appeared or took the witness stand on this date. The defendant was thereupon questioned by Judge Williams but without first being advised that he could remain silent and without being placed under oath. Judge Williams, by both leading and general questions, inquired of defendant, who was a reporter for the Plain Dealer, concerning the events leading up to the issuance of the two traffic citations hereinabove referred to. In response thereto, the defendant freely admitted to the trial Judge the facts as hereinabove set forth. In other words, he made a clean breast of the facts as stated. Following this disclosure, Judge Williams then asked defendant if he had not knowingly participated in an attempt to defraud the court, and defendant replied that such was not the intent of his action. Defendant did not refuse to answer any questions asked of him by Judge Williams, and no one else questioned defendant.

After the Judge's questions were answered, the Judge then called a recess. When the court reconvened, defendant asked for a continuance so that he could seek legal counsel. A continuance was thereupon granted, and the matter was set to continue on June 1, 1962.

On June 1, 1962, the defendant, together with counsel, appeared before the Honorable Theodore M. Williams. Upon convening of court, the Prosecutor, Mr. Richard Matia, requested the court to nolle both charges. Counsel representing defendant had no objection to the nolle. The court inquired of the Prosecutor whether his office had anything to do with the preparation of the charges and whether he knew how they were prepared and got on the court's docket.

The Prosecutor responded that the papers were prepared by Sergeant Burger and placed upon the docket without the knowledge of the Prosecutor's office or the Chief of Police. They were placed on the docket with the knowledge of Commissioner Halloran, Robert Tidyman, Chief Police Reporter for the Cleveland Plain Dealer, the defendant, and Sergeant Burger.

The record is silent as to who in fact caused said citations to be placed upon the docket.

The court then inquired whether Sergeant Burger was asked to execute the affidavits, whereupon Sergeant Burger admitted that he did not swear to the affidavits because "I saw no violation." In response to the further inquiry of the Judge as to the source of the information contained in the citations, Sergeant Burger said they were made up by him and with participation of defendant in the Traffic Office, in the Traffic Annex, and that the facts therein recited were untrue.

Prosecutor Matia stated to the court that Sergeant Burger acted on the instructions of the Traffic Commissioner and that the Prosecutor felt that the Sergeant was executing a direct order.

The court then sought to question the defendant and was met by objections of his counsel for the reason that the offenses with which defendant was charged were still pending and had not yet been nolled. The court here interposed that "The question has been fraud." Defendant's counsel responded: "He has not taken the witness stand. He is not subjecting himself to the court or anyone else."

The court then requested that the defendant be sworn and take the witness stand. This was objected to by defendant's counsel as being highly improper and an attempt to force defendant to be a witness against himself.

The trial Judge then directed a question to defense counsel:

"Well, then, you are saying as his representative and a member of the Bar, that you feel it is improper having heard what you have just heard here in open court, for the Court to inquire as to the activities in connection with a fraud which has been perpetrated on this Court?"

To which counsel responded:

"I have heard no testimony that there has been a fraud, your Honor. I haven's heard anyone being sworn or take the witness stand."

Counsel further protested that the only charge against defendant was two traffic offenses. The court conceded that that was correct and granted the Prosecutor's motion to nolle the charges. Whereupon the court proceeded:

"Now, then, in view of the fact that there is no case pend-

ing before the Court and in view of the fact that information has come to the Court that Mr. Treon participated in activities here, in connection with these, with this fictitious claim, the Court now wishes to have Mr. Treon and Sergeant Burger sworn in and the Court intends to make some inquiry through the Prosecutor relative to this action.''

This was met by a question of counsel as to whether there are any charges pending against the defendant now. The court proceeded:

''It has been brought to the attention of this Court that Mr. Treon and Sergeant Burger participated in acts, in the Court's judgment, certainly would be contemptuous acts relative to this preparation of papers that have been placed on the Court's docket of a nonexistent case, and the Court would like, has the right, certainly, to make some inquiry relative to this matter.''

Defense counsel interposed the objection and claimed that before any matter could properly come before the court in such a subject, written charges must be filed against the defendant and he must be given a chance to answer and prepare his case. ''I am still objecting because there is nothing properly before this Court at the present time.'' The Court then interposed further:

''In this instance you have two individuals standing before the Court, in the presence of the Court, admitting that they participated in a fraudulent act which is now before this Court, and certainly this is not a matter of constructive contempt. This certainly is a matter of which is taking place in the presence of this Court and the Court is certainly in a position to cite them in connection with these acts that result in what the Court has heard here.''

This was followed by the objection of counsel for the defense and Mr. Carnes of the Prosecutor's Office interjected:

''Your Honor will recall in the prior hearing, certain admissions were made relative to this Court by the defendant.''

The Court acknowledged that he recalled the admissions made by the defendant on a prior date, May 23, 1962, and in reference thereto, the court proceeded:

''He made the statement in response to questions by the Court and he clearly admitted at that time that he did partici-

pate in this activity of a fraud being perpetrated on this Court that resulted in this action."

Over the objections and protest of counsel representing the defendant, the court proceeded to say:

"Well, I am citing Mr. Treon for contempt of court on what has taken place in this courtroom before this Court in the presence of this Court, and I am citing Sergeant Burger for contempt of court, for participating in this activity, which certainly is an affront to the dignity of this Court and to the administration of justice as we know it in our community."

To all of which counsel representing the defendant objected. The Court then proceeded to make a lengthy statement and concluded it with these remarks:

"This Court can do nothing else but find you both guilty of contempt of court. And because of the fact that you have been pawns used in this whole program, the Court certainly must take that into consideration, and I hope that nothing like this ever happens again.

"The Court fines both of you $25 and costs and ten days and suspends the sentence."

After the finding of guilty and the imposition of sentence, the contempt matter was assigned Case No. 798,991, on the docket of the Cleveland Municipal Court.

On or about June 4, 1962, appellant filed a motion for a new trial, a motion for judgment notwithstanding the verdict in order to arrest the judgment and sentence, and further requested an oral hearing on such motions, which was granted and heard on June 22, 1962, before Judge Williams, counsel appearing for the defendant. At this hearing, counsel for appellant argued to Judge Williams that said motions should be sustained and that the contempt charge against appellant should be summarily withdrawn for the reasons that:

1. The evidence before the court was legally insufficient to show that appellant was guilty of contempt of any kind, and in fact such evidence revealed the opposite, and

2. Even assuming arguendo that contempt was committed by appellant, which is specifically denied, such contempt was indirect and not direct, and therefore appellant was entitled to certain rights under due process of law which had been denied to him, to include written charges against him and the op-

portunity to present a defense and otherwise be heard in his own behalf.

An examination of the record before this court and particularly the colloquy that took place on the hearing of these motions, with special reference to pages 33, 34, 35 and 36 of the record, it is apparent that counsel for the defendant was seeking to clear up what particular acts formed the basis of the court's finding of contempt, whether there were some acts that occurred on May 23, 1962, or June 1, 1962, or whether the acts were those committed on some date prior in time to the only two times which the defendant appeared before Judge Williams. It is clear from the record that the acts which formed the basis for the contempt finding by the court were those acts which were participated in by the defendant in the original preparation of the two traffic citations. The court indicated on page 34 and again on page 36 that at no time on May 23rd or June 1st did the defendant commit any acts of a contemptuous nature in the presence of the court. It is also clear from the record that the acts forming the basis of the contempt finding were acts performed in connection with the preparation of the fictitious charges which ultimately found their way to the docket of Judge Williams.

We have examined the record further and do not find anything therein that would indicate that the defendant participated in any way in the actual filing of the charges with the Clerk of Courts. The only reference thereto is found on page 7 of the record to the effect that the charges were placed on the docket with the knowledge of Commissioner Halloran, Robert Tidyman, Chief Police Reporter for the Cleveland Plain Dealer, the defendant herein, and Sergeant Burger. In other words, the record indicates that the defendant knew that these charges were placed on the docket but there is nothing of an affirmative nature to indicate that he committed any act resulting in the placement of these charges upon the court's docket.

Four of the eight assignments of error, urged by the appellant, are:

"1. The Court erred in finding appellant guilty of any contempt whatsoever, since there was no proof of either direct or indirect contempt.

"2. The findings and the judgment of the court were not

sustained by sufficient evidence and were contrary to the evidence and the law.

"3. The Court erred by summarily finding appellant guilty of direct contempt of court and assessing a penalty therefor.

"5. The Court order finding appellant guilty of direct contempt and assessing a sentence therefor was insufficient and contrary to law."

These four assignments of error will be considered together.

As we approach the consideration of the problem here involved, we are not unmindful of the duty and responsibility of the court to be elert to protect the judicial processes from being brought into disrepute and to act vigorously when confronted with acts or conduct, the tendency of which interfere with the due administration of justice, and such contemptuous acts are to be dealt with accordingly. It is within the inherent power of the court to protect its processes against wrongdoing and to punish, as and for contempt, those guilty of such unlawful conduct.

Contempt in its narrow and more usual sense has been defined as follows:

"* * * a despising of the authority, justice, or dignity of the court; and he is guilty of contempt whose conduct is such as tends to bring the administration of the law into disrespect and disregard or interferes with or prejudices parties litigant or their witnesses during litigation." Ohio Jurisprudence (2d) 90, Contempt, Sec. 2.

The intent of the person committing an act of contempt likewise is a factor for consideration for it is pointed out in 11 Ohio Jurisprudence (2d), 104, Contempt, Sec. 16, that:

"There must be something in the manner of doing the act which is charged as a contempt, and something in the circumstances under which it is done that is disrespectful or a hinderance to the administration of the affairs of a court, and the act must be also done wilfully and for an illegitimate or improper purpose * * *."

It must further be borne in mind that this proceeding is criminal in its nature, and one charged with criminal contempt is entitled to the constitutional guarantees provided for those charged with crime. In criminal contempt as in criminal cases, the presumption of innocence exists. Proof of guilt must be

beyond a reasonable doubt and the defendant may not be compelled to be a witness against himself. *State* v. *Jaffrin*, 74 Ohio Law Abs., 577, at page 583, 136 N. E. (2d), 436.

Having in mind the foregoing principles, we proceed to a consideration of the record. The basis of the oral direct contempt charge against defendant is that defendant intentionally invoked the jurisdiction of the court over the subject matter of two nonexistent traffic offenses and thereby tampered with the orderly judicial processes of the court.

The record is clear that sometime before May 14, 1962, this defendant, along with responsible officers of the Cleveland Police Traffic Bureau, concocted the plan, hereinabove set out, to endeavor to trap someone suspected of fixing traffic tickets. If such a practice existed, it was the duty of the police department to investigate such a practice and to apprehend the guilty. The matter having been brought to the attention of the Traffic Commissioner, it appears that he, with the cooperation of the appellant and Sergeant Burger, arranged to have the bureau issue two fictitious citations for the defendant. The record is silent as to who in fact filed the so-called citations with the Clerk of Courts, but it is clear that it was done with the knowledge of the defendant and the officers who devised this ill-conceived plan of procedure, and that as a consequence, they appeared on the trial docket of the court on May 14, 1962.

The fictitious citations were prepared in the traffic annex, which is not in the courthouse and certainly not in the presence of the court.

At no time during the proceedings was there filed in either of the two citations a lawful affidavit, sworn to by anyone, formally or legally charging the defendant appellant with these traffic offenses.

This court, in the case of *State* v. *Zdovc*, 106 Ohio App., 481, 151 N. E. (2d), 672, has held that a prosecution of a criminal case is commenced by the filing of an indictment, an information by the prosecuting attorney, or the filing of an affidavit sworn to by a citizen or police officer. This is a prerequisite for the court to acquire jurisdiction of the subject matter. The court further held that all proceedings subsequent to the filing of an affidavit not sworn to are void *ab initio*. This would include a plea of not guilty by the defendant to the unsworn affi-

davit entered in open court. See also, *State* v. *Lanser*, 111 Ohio St., 23, 144 N. E., 734; *In re Van Hoose*, 61 Ohio Law Abs., 256, 103 N. E. (2d), 842.

In the face of these holdings and upon the record, we must and do conclude that there is no proof that the defendant did invoke the jurisdiction of the court. In fact, jurisdiction of the court was not invoked at all. That being so, defendant's action of appearing in open court, as he did on May 23, 1962, and his entering of a plea of not guilty, was void and of no consequence. *State* v. *Zdovc, supra.*

The proceedings of May 23, 1962, and June 1, 1962, the only times that the defendant appeared before the trial court, hereinabove described, fail to disclose that defendant committed any act of a contemptuous nature. This was conceded by the trial Judge. The record indicates that on May 23, 1962, upon a plea of not guilty to the charges on the court's docket, the trial Judge, who evidently had learned earlier of the fictitious nature of the citations, proceeded to inquire of the defendant as to the source of the fictitious charges. The effect of this was to cause this appellant to be a witness against himself.

The appellant did not flinch. He proceeded to tell the truth about the matter as above outlined. He answered all of the questions put to him by the trial Judge. When asked by the trial Judge "if he had not knowingly participated in an attempt to defraud the court," he replied "that such was not the intent of his action."

Section 2705.01, Revised Code, provides for direct contempt as follows:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."

The elements for direct contempt have been set forth by the Supreme Court of the United States in *In re Oliver*, 333 U. S., 257, 68 S. Ct., 499, 92 L. Ed., 682, at page 275 of the United States Reports, as follows:

"* * * charges of misconduct, in open court, in the presence of the judge, which disturbs the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court, and where im-

mediate punishment is essential to prevent 'demoralization of the court's authority' before the public.''

Our own Ohio Supreme Court in *In the Matter of Lands*, 146 Ohio St., 589, 67 N. E. (2d), 433, stated:

''Contempts may be divided into two general classes, direct and indirect. A direct contempt is one committed in the presence of or so near the court as to obstruct the due and orderly administration of justice, and punishment therefor may be imposed summarily without the filing of charges or the issuance of process. (Section 12136, General Code.)''

To constitute direct contempt, the alleged misbehavior must (1) require immediate punishment to preserve the court's authority; (2) take place in the presence of the Judge in open court or in or before any of its constituent parts, such as the court room or jury; and (3) obstruct the administration of justice by delaying or hindering or influencing a pending case.

In view of the foregoing, was there any basis upon which direct contempt could be founded in the matter before us?

As we view the record:

1. There was no requirement for immediate punishment to preserve the court's authority;

2. The conduct which allegedly constituted contempt did not occur in the actual or constructive presence of the court or Judge or any of the court's constituent parts, but in fact occurred in the Cleveland Police Department many days before the docketing of any traffic tickets and prior to any appearance by appellant before the trial court; and

3. There was no obstruction of the administration of justice since there was no pending case at the time of the conduct of appellant which allegedly constituted contempt.

Two earlier decisions of this court are worthy of consideration because both throw a great deal of light on the problem before us and upon several aspects thereof.

In *State* v. *Jaffrin, supra,* decided by this court, the defendant had been accused of fixing a traffic ticket for money paid to her. The trial court found her guilty of direct contempt, but this court held that under the facts developed, no direct contempt was committed. Paragraph 4 of the headnotes of said case reads as follows:

The act of accepting money for the purpose of 'fixing' a

traffic charge filed in the Municipal Court did not constitute summary contempt, a misbehavior in the presence or so near the court or judge as to obstruct the administration of justice, punishable under Section 2705.01, Revised Code, but such act was an indirect contempt encompassing interference with the judicial process of such a character as to bring the court into disrepute by acts committed without the knowledge of the court.''

See Section 2705.02, Revised Code.

In *Seidenfeld* v. *Seidenfeld*, 28 O. L. R., 401, this court pointed out that a direct contempt is not possible where there was no pending case at the time of the alleged wrongdoing. This was a divorce action in which service was to be obtained by publication. The affidavit for such service was prepared prior to the filing of the case. Subsequently, the suit was voluntarily dismissed. Whereupon, the court, sua sponte, questioned the plaintiff as to perjury in the affidavit. She was found guilty of summary contempt and sentenced to the Women's Reformatory for one year. The judgment of the court was reversed. The court stated at page 403 of the opinion:

''From an examination of the record the conclusion is quite clear that the basis for the court's action was that the contempt was committed in the presence of the court and was consequently subject to summary punishment. ''From our view of the record it appears therefrom that the affidavit was made prior to the filing of the petition for divorce and this question becomes pivotal because it is determinative of the question as to whether the contempt, if any, was committed in the presence of the court, and if so whether the plaintiff was amenable to summary punishment.

''Having reached the conclusion that no action was pending at the time of the making of the affidavit, it is our judgment that whatever the offense might be called, it was not a contempt for which summary punishment could be dealt because it was done beyond the presence or vicinity of the court, and thus under the procedure for contempt based upon the authorities, it became necessary to file charges and give the defendant a hearing thereon in order to determine the question of perjury.''

The guilt of a person accused of contempt must be shown affirmatively in the record before a reviewing court may affirm.

This is contrary to the usual rule on appeal. Thus, an ap-

pellate court reviewing a conviction for contempt may *not* assume, in the absence of record evidence to the contrary, that the action of the lower court was correct and lawful. *James Hunt* v. *State*, 5 O. C. C. (N. S.), 621 at 643, 17 C. D., 16; *State* v. *Hershberger*, 83 Ohio Law Abs., 62, 168 N. E. (2d), 13; 11 Ohio Jurisprudence (2d), 163, Contempt, Section 79.

The general rule in cases of direct contempt is that the trial court's judgment or order of direct contempt must itself contain a complete and clear statement of the facts upon which the conviction is based, since the judgment or order ordinarily constitutes both the findings of fact and the judgment of the trial court. Thus, an appellate court, by merely inspecting the judgment or order, may readily determine whether contempt was in fact committed and whether the trial court had jurisdiction to punish it. 154 A. L. R., 1227.

From a review of the cases, it is clear that the duty imposed upon the trial court is to "enter a written order, setting forth fully, clearly, and specifically the facts out of which the contempt arose, so that the reviewing court may determine if the committing court had jurisdiction to enter the order." *People* v. *Koniecki*, 28 Ill. App. (2d), 483 at 487, 171 N. E. (2d), 666. To the same effect in *Ex Parte Woodworth*, 6 O D., 19, C. P. of Hamilton County; *State, ex rel. Hixson* v. *Hixson*, 199 Ore., 574, 263 P. (2d), 603; *Kroneberger* v. *Superior Court,* 196 Cal. App. (2d), 206, 16 Cal. Rep., 339.

The court's journal in the case before us reads in its entirety:

"Wm. Treon 798991 C o C

"June 1, 1962

"Defendant found guilty of Summary Contempt of Court in that he admitted in the presence of, and in open court that he participated in falsifying facts which attempted to allege two traffic violations which in fact never occurred—said violations were caused to be entered on the docket of the court as actual cases. Being guilty of summary contempt of court, defendant is sentenced to 10 days workhouse imprisonment and to pay a fine of $25.00 and costs. Sentence suspended."

Defendant contends that the journal entry is insufficient since it does not in itself recite facts sufficient to establish direct contempt. The importance of the rules of law cited with re-

spect to the contents of the court's journal is demonstrated when we consider the arguments of the Prosecutor.

In the examination of appellee's argument, as contained in his brief, counsel points out that preliminary to the action of the court in finding defendant guilty of contempt,

"The Court took cognizance of two things—

"(1) his conduct in persisting to represent himself as a defendant in two traffic cases that were nonexistent, and

"(2) that this defendant remained silent although the court gave him every opportunity to explain or purge himself of conduct which the court could not overlook. Therefore the court found this defendant guilty of summary contempt."

This argument does not square with the entry made by the court as the basis for his findings, nor is it borne out by the statements made by the trial Judge when he conceded that nothing done in the presence of the court by this defendant, on the two occasions when he appeared before the Judge, was of a contemptuous nature.

Again, at page 9 of his brief, counsel argues:

"We are sure that the Honorable Judge Williams fully expected that on the continuance date, namely, the 23rd of May, this Defendant, and the police would appear and make a clean breast of the whole matter; he certainly must have been surprised to learn that this Defendant had no such intention. This Defendant appeared on the 23rd of May, entered a plea (not guilty from bill of exceptions) to the merits, even though he knew the Judge was aware that the charges were a falsification of the Court's journal. This certainly was contemptuous conduct on the part of the Defendant * * *."

We must again reiterate what has been said above as to the court's entry and the Judge's concession which indicate that the Judge did not regard this as contemptuous. The fact is that when asked in open court about these citations and their origin, the defendant told the court the truth, facts which were then known to the Judge.

It was only after the defendant in open court made a clean breast of his conduct in response to the inquiry by the court (thus procuring defendant to be a witness against himself, something he could not have been compelled to do had he known

his rights or been advised of them) and his indication to the defendant that he might be facing trouble, did the defendant ask for a further continuance so that he would have the benefit of legal counsel.

Once again, at page 12 of his brief, appellee's counsel labors to create a basis for the finding of guilty of summary contempt.

The brief states:

"The Municipal Court owes this Defendant no duty other than due process of law. The Court knew that it had no jurisdiction to try the Defendant on two traffic charges. The Court knew something else, however,—it knew that this Defendant repeatedly appeared in his court while the court was in session and acted to all intent and purpose as though there were bona fide charges pending against him. He even gave his right name on the traffic tickets; he entered a plea of 'Not guilty' to the charges and then stood firm. He embarrassed the Court further by imposing on the Judge the task of developing the fact which would show that this Defendant while standing in the presence of the Court was a fraud."

As to the first of these charges, the record clearly demonstrates that these acts took place before there was a pending case—about which defendant, appearing before the Judge on May 23rd, told the truth.

As to the latter, there is nothing in the record tending to prove that this defendant did anything to cause said violations to be placed upon the court's docket except his statement that he had knowledge thereof.

It is apparent to us from the record that at no time during these proceedings was any witness sworn to testify against this defendant; that at no time was there a pending case before the court; that at no time was the jurisdiction of the court legally invoked; that what the court knew about the situation that existed was brought to the attention of the court through means alluded to in appellee's brief but not on the record, except the admissions made by the defendant on May 23, 1962, when inquired of by the court at which time he made a complete admission of his conduct, but denied any intent to defraud the court; that what the court regarded as summary contempt were the acts of the defendant prior to the filing of said charges in the Clerk's office, and that the record does not support the charge

that defendant caused said fictitious charges to be put upon the court's docket.

We have earlier in this opinion referred to the plan devised by the persons responsible, of which this defendant was one, as being ill conceived. The fact is that the acts and conduct of this defendant and those associated with him were contemptuous, probably constituting indirect contempt. We are not called upon to pass upon that question.

We do, however, conclude that under the facts and circumstances developed in this action, the defendant's acts and conduct do not constitute direct or summary contempt, and that the errors claimed in the four assignments under consideration are well made.

In view of our conclusion, it will not be necessary to examine the remaining bases of claimed error.

The judgment of the trial court is reversed and final judgment entered for the defendant.

HURD, P. J., CORRIGAN, J., concur.