Manchester Municipal Court,
No. 5116.

STATE

*v.*

JOSEPH R. MOQUIN *& a.*

Argued April 2, 1963.
Decided June 7, 1963.

*William Maynard*, Attorney General, *Elmer T. Bourque*, Deputy Attorney General, and *Irma A. Matthews*, Law Assistant (*Mrs. Matthews* orally), for the State.

*Devine, Millimet, McDonough, Stahl & Branch* (*Mr. Bartram C. Branch* orally), for defendant Joseph R. Moquin.

*Eaton, Eaton & Ross* (*Mr. Robert I. Eaton* orally), for defendant Jon L. Houghton.

LAMPRON, J.    August 19, 1962, a motorcycle operated by Houghton on which Moquin was a passenger was involved in several violations of the motor vehicle laws. They eluded arrest at that time but were later apprehended. The defendants agreed between themselves that Moquin would assume responsibility for these offenses. Houghton had a record of prior violations and feared the loss of his license if he appeared in court charged with the present transgressions. Consequently the defendants led the interrogating police officers to believe that Moquin was the operator. This resulted in complaints being issued against Moquin for six violations in the operation of the motorcycle while it was in fact operated by Houghton.

Both defendants were present in the municipal court of Manchester when pleas of *nolo contendere* were entered by Moquin to the charges against him and accepted by the presiding justice and fines imposed.

Later the same day Moquin admitted he was not the operator and as a result complaints for these violations were issued against Houghton who pleaded guilty to the offenses charged. The prior complaints against Moquin for these same offenses were then brought forward and dismissed.

When questioned by the court both defendants admitted that Moquin was not the operator of the motorcycle when the offenses occurred, that Houghton was, and that the two had agreed between themselves that Moquin would assume the responsibility for the violations to protect Houghton's license.

On the hearing to show cause why the defendants should not

be adjudged in contempt, there were findings by the presiding justice that they had perpetrated a fraud upon the court, that their conduct constituted an obstruction of justice and that they were guilty of contempt.

The power to punish for contempt is inherent in the very organization of all courts and is essential to the functioning of our judicial system. *State* v. *Matthews*, 37 N. H. 450; *State* v. *Towle*, 42 N. H. 540, 546; *Opinion of the Justices*, 86 N. H. 597, 601; *State* v. *Jackson*, 147 Conn. 167; *Wood* v. *Georgia*, 370 U. S. 375, 383. The necessity for such powers in courts before which it is probable that more people appear than before all other courts combined is obvious. No reasons of precedent or policy compelling a contrary holding are suggested and none is apparent. Furthermore it is the duty and responsibility of courts to be alert to protect the judicial processes from being brought into disrepute and to act vigorously when confronted with acts or conduct which tend to obstruct or interfere with the due and orderly administration of justice. *State* v. *Treon*, (Ohio App. 1963), 188 N. E. 2d 308, 313.

In *Berlandi* v. *Commonwealth*, 314 Mass. 424, two persons were found guilty of contempt for their participation in a "take-the-rap" scheme designed to secure the freedom of one of them who was guilty of a crime. It was held in *State* v. *Jaffrin*, 136 N. E. 2d 436 (Ohio 1956) that the taking of money in payment for a promise to "fix" a traffic arrest so that without appearance or trial the person charged with the offense could avoid punishment constituted contempt even if no act in furtherance of this conspiracy was shown.

The facts in *State* v. *Treon, supra*, bear a striking similarity in many respects to those in the case before us. It was there held that a newspaper reporter, who, in cooperation with a police effort to trap someone suspected of fixing traffic tickets, participated in a plan to issue to him two tickets for nonexistent traffic violations which were entered on the court's docket, although not guilty of direct contempt could probably be found guilty of indirect contempt. It was so stated even though the fictitious citations were not prepared in the presence of the court but by an official in the traffic bureau and even though the defendant did not knowingly participate in an attempt to defraud the court. 17 C.J.S., Contempt, *p*. 10, *s*. 8.

The two defendants in our case could be found to have knowingly conspired to so conduct themselves as to have com-

plaints issued against Moquin, who was innocent of the numerous traffic violations charged, instead of against Houghton, who had committed these offenses. Also that their motive for so acting was to obstruct the due administration of justice which would probably result in the loss of Houghton's license to drive a motor vehicle. It could be found further that their scheme was successful and did result in the issuance and presentation of complaints in the municipal court of Manchester against a defendant other than the perpetrator of the offenses. Moquin further aided this predetermined deception and obstruction of justice by pleading to these complaints in open court and Houghton, who was present, was equally a participant by his silence which constituted a tacit approval of Moquin's action.

We are of the opinion that their entire course of conduct could be found, as it was by the presiding justice, to constitute a fraud on the court, an obstruction of justice and contempt. *State* v. *Treon* (Ohio App. 1963), 188 N. E. 2d 308, 313; *State* v. *Jaffrin* (Ohio App. 1956), 136 N. E. 2d 436; *Berlandi* v. *Commonwealth*, 314 Mass. 424. See *People* v. *Katelhut*, 322 Ill. App. 693; *Ex parte Billy Burl Clayton*, 350 S. W. 2d 926 (Tex. Cr. App. 1961); *Taylor* v. *State*, 112 Neb. 259.

*Remanded.*

KENISON, C.J. and DUNCAN, J., dissented; the others concurred.

KENISON, C.J., *dissenting:* I can agree that the defendants' actions in this case were morally reprehensible, legally wrong and should be punished. But these conclusions do not decide the threshold question before us. The wrong question frequently begets a wrong answer as this case illustrates in assuming that municipal courts have jurisdiction to execute contempt decrees in motor vehicle cases. While some early cases in the Nineteenth Century held that the power of contempt was inherent in all courts independently of statute (*State* v. *Matthews*, 37 N. H. 450, 453; *State* v. *Towle*, 42 N. H. 540), the matter was put into proper focus by the *Opinion of the Justices*, 86 N. H. 597, 602, decided in 1933: "As before pointed out, it is the law of this state that the power to punish for contempt is an essential attribute of a *court of general jurisdiction.*" (Emphasis supplied). It is clear that the power of contempt is inherent in the Supreme and Superior Courts as courts of general jurisdiction.

RSA 490:4; RSA 491:7, 19, 20; RSA 498:1. Probate courts have limited and special jurisdiction only so far as granted by the Legislature. N. H. Const., Pt. II, *Art.* 80; *Wood* v. *Stone,* 39 N. H. 572; *Protective Check Writer Co.* v. *Collins,* 92 N. H. 27. Consequently, it was deemed advisable to give probate courts authority to issue contempt decrees in 1911 (Laws 1911, *c.* 129, *s.* 1) which was further extended in 1957. Laws 1957, *c.* 240 *s.* 2; RSA 547:11 (supp); Seventh Report, N. H. Judicial Council 47 (1958).

Municipal courts, like probate courts, are courts of limited jurisdiction and have the authority to issue contempt decrees only in particular cases. RSA 592-A:15 (supp); Laws 1957, *c.* 244, *s.* 8 (the failure of a party to answer a summons); RSA 165:19 (contempt powers in support cases). Municipal courts, when acting as juvenile courts, have broader contempt powers but they are limited by statute in the manner of execution and the extent of punishment. RSA 169:5; RSA 169:35 (supp); Laws 1957, *c.* 214, *s.* 1. Interestingly enough the latter statute limits the extent of the punishment, provides that the defendant shall "have a reasonable time to make a defense," and that the trial shall be "before a judge other than the one who issued the written order." But there is no statute granting municipal courts contempt power in motor vehicle cases and no general statute granting them contempt powers in the exercise of their criminal jurisdiction except as mentioned in the instances cited above.

The Legislature has seen fit to grant contempt powers to the municipal courts only in limited instances, none of which is applicable to this case. Since I am convinced that the municipal court has no contempt power in the present case, I do not reach the questions discussed in the majority opinion.


DUNCAN, J., *dissenting:* Unlike the district courts of Massachusetts which are courts of "superior and general jurisdiction" (*Berlandi* v. *Commonwealth,* 314 Mass. 424, 442, relied upon by the majority), the municipal courts of New Hampshire have limited jurisdiction, which does not carry with it the inherent power to punish for contempt. See also, *Opinion of the Justices,* 314 Mass. 767, 776, 784. I concur in the foregoing opinion by the Chief Justice. In so doing I would not have it appear that I would concur in the majority opinion if I believed that

the municipal court had jurisdiction.

Misrepresentations made by these defendants which gave rise to contempt charges occurred when no action was pending before the municipal court, and took place "out of the presence of the court" (RSA 169:35 (supp)) during interrogation of the police. Moquin made no representations to the court by pleading nolo. Houghton made none by preserving silence before the court, in the exercise of his constitutional right against self-incrimination.

If contempt could properly be found, it was at most indirect contempt. See *In re Oliver*, 333 U. S. 257, 274-275. Due process of law in such a proceeding dictates that trial shall be before a tribunal free from bias. This suggests if it does not require that some judge other than the justice found to have been subjected to fraud should have conducted the proceedings. See Goldfarb, The Constitution and Contempt, 61 Mich. L. Rev. 283, 330-333. *Cf.* RSA 169:35 (supp) *supra.* "It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit." *Art.* 35th, Pt. I, N. H. Const.

The express transfer by the municipal court justice of the question of "Whether Judge Chretien had authority to try the respondents in the contempt proceedings" goes unanswered by the opinion of the majority, except by implication. Other problems which surround criminal contempt proceedings likewise go unconsidered. The Constitution and Contempt, *supra.* Since I join the view that the municipal court had no jurisdiction to punish for contempt in this case, there is no occasion to here pursue other issues.