JOURNAL ENTRY AND OPINION
Burl Owens, Esq. appeals from an order of the common pleas court which found him in contempt of court as a result of a question he asked of a venireman at the domestic violence trial of Reginald Fortson. On appeal, Owens contends that the trial court erred in not providing him with notice or a hearing prior to that finding and furthermore abused its discretion by finding him in contempt of court. After a review of the record and applicable law, we conclude that, while a trial court has the authority to summarily punish for direct contempt, in this case Owens' conduct did not warrant a contempt finding, and therefore we vacate the finding of contempt.
The record reveals that during the jury voir dire of Fortson's domestic violence trial, the following colloquy occurred between Owens and Juror No. 5:
 Mr. Owens: Again, I keep emphasizing to the whole panel that a person is presumed to be innocent until proven guilty beyond a reasonable doubt. And as you look at the defendant now, can you give him that presumption?
Jury No. 5: Yes.
 Mr. Owens: If anything happened right now and you'd have to make a decision, you'd have to come back not guilty, right?
 The Court: Objection. I'd call counsel to the sidebar, please.
 The Court: Let the record indicate the Court has brought counsel to the sidebar and reminded counsel that Rule No. 4 of the Rules of Voir Dire, which were read to both attorneys prior to this trial starting, indicated that jurors may not be asked what kind of verdict they might return under any circumstances. And I believe you have an objection.
 Mr. Owens: Yes. I asked juror number five * * * whether he understood the concept that a person is presumed to be innocent unless proven guilty beyond a reasonable doubt. And I made reference, to make sure that he understood, by saying, "If you sat down now and did not hear anything, would that mean you would have to come up with a not guilty verdict because reasonable doubt has not been removed." That was my effort to make sure he understood what reasonable doubt was and what the burden was.
 The Court: The Court at this time will terminate Mr. Owens' voir dire and complete it for him.
 Mr. Owens: Put my objection on the record. (Tr. 10-12.)
Later, during the voir dire of Juror No. 2, the following exchange occurred:
 Mr. Owens: You will make sure that the burden of proof is on the State to prove beyond a reasonable doubt?
Juror No. 2: Yes.
 Mr. Owens: Or you will come back with the proper verdict?
Juror No. 2: That's correct.
The Court: I'm sorry. What was the last question?
 Mr. Owens: Or you will come back with the proper verdict?
Mr. Lavelle: Objection.
The Court: The objection will be sustained.
Mr. Owens: Nothing further.
The Court: Can I see counsel at the sidebar, please.
 (The following proceedings were had at the sidebar and out of the hearing of the prospective jury panel.)
 The Court: Mr. Owens, was that a deliberate act to defy this Court's rules that the Court read to you?
Mr. Owens: Not at all.
 The Court: The Court finds you in contempt. You're fined $100. You should pay that today.
Mr. Owens: I don't have it right now, Judge.
The Court: Well, pay it before you leave today.
 Mr. Owens: I object. Judge, I asked whether he could come back with a proper verdict. I didn't ask him which way he was going to go. I asked him, would he come back with a proper verdict after he deliberated.
The Court: You may go back. (Tr. 44-45.)
Owens now appeals from this finding of contempt. Although he paid the $100 fine, he asserted at oral argument before our court that he did this to avoid being jailed for not paying it. His assertion is corroborated by the previously cited colloquy, where the court told him to "pay it before you leave today." Hence, his payment does not reflect a voluntary situation but rather one where he paid the fine under duress. Thus, this appeal is not moot. See State v. Wilson (1975), 41 Ohio St.2d 236,325 N.E.2d 236. We review the two assignments of error raised by Owens together, as they concern the same issues of law and fact. They state:
 I. THE TRIAL COURT ERRED BY HOLDING APPELLANT IN CONTEMPT, WITHOUT NOTICE OR A HEARING, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL DUE PROCESS RIGHTS.
 II. THE TRIAL COURT ABUSED ITS DISCRETION BY HOLDING APPELLANT IN CONTEMPT.
Owens contends that the court erred when it found him in contempt without giving him a written notice of the charge of contempt and without conducting a hearing, as required by R.C. 2705.03. He further maintains that his remarks about the presumption of innocence and the state's burden of proof, which the court found contemptuous, were only made to ensure a fair and impartial jury panel for his client and, therefore, the court abused its discretion by finding him in contempt.
The state urges that the court had the power to summarily punish a person guilty of misbehavior in the presence of the court pursuant to R.C. 2705.01 and, therefore, it did not err in not providing notice or a hearing prior to the contempt finding. The state also maintains that the trial court exercised sound discretion in finding Owens in contempt for disobeying the court's rule prohibiting counsel to inquire of the jurors during voir dire as to the specific verdict they might return.
The issues for our review then concern whether the court erred in failing to provide notice and a hearing before finding Owens in contempt and whether it abused its discretion in so finding.
The law of contempt is intended to uphold and ensure the effective administration of justice, secure the dignity of the court, and to affirm the supremacy of law. Cramer v. Petrie (1994), 70 Ohio St.3d 131. The decision of whether to find one in contempt of court rests in the sound discretion of the trial court and will not be overturned on appeal absent an abuse of that discretion. State v. Kilbane (1980), 61 Ohio St.2d 201, paragraph one of the syllabus.
Furthermore, the law of contempt categorizes contempt into direct contempt and indirect contempt; it also distinguishes between civil and criminal contempt. In In re Williams (August 23, 1990), Cuyahoga App. No, 56908, unreported, we summarized the law regarding these various categories of contempt:
 In reviewing a contempt conviction, a court must first determine whether appellant's conduct constituted direct or indirect contempt. Second, the sanction imposed by the trial court must be scrutinized to determine whether the court used its civil or criminal contempt powers. State v. Kilbane
(1980), 61 Ohio St.2d 201.
 "[A] person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice" commits direct contempt, and the judge may summarily punish the offender. R.C. 2705.01. Contempts committed outside the presence of the court are indirect in nature. R.C. 2705.02. In cases of indirect contempt, a written charge must be filed, and the accused has an opportunity to be heard. R.C. 2705.02.
 The purpose of the sanction imposed by the court indicates whether the contempt is civil or criminal. The sanction in civil contempt is intended to coerce the contemnor to comply with the court's orders. The sanction in criminal contempt is intended to punish the contemnor. State v. Kilbane, supra, at 204-205.
Applying this nomenclature to the instant case, our review of the transcript shows that Owens' conduct that resulted in the contempt finding occurred in the presence of the court, and therefore it involves direct contempt.
Further, the record indicates that the $100 fine imposed did not attempt to coerce Owens to comply with a court order but was punitive in nature; therefore, the contempt was criminal in character. Thus, the contempt conviction challenged here concerns a direct criminal contempt of court.
For direct contempt, R.C. 2705.01 empowers a court to summarily punish an offender. It states:
 A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice.
In addition to the statute, the decisional case law also affords a court the power to summarily punish a contemnor in the case of direct criminal contempt. For example, in In re McGinty (1986),30 Ohio App.3d 219, the court stated that procedural due process rights are inapplicable in direct criminal contempt matters; in In re Gonzalez
(1990), 70 Ohio App.3d 752, the court concluded that in direct contempt situations, a court may summarily punish an offender without a hearing or notice as long as the court informs the contemnor that he has been found in contempt.
Thus, regarding the issue of whether the court erred in not providing Owens notice or conducting a hearing prior to its finding of contempt, we conclude that the contempt finding in the instant case relates to an act characterizable as direct criminal contempt, and, as such, the court would have the power to punish it without a hearing or notice if Owens' conduct indeed rises to the level of misbehavior punishable in accordance with the law of contempt. Having so determined, we now turn to Owens' contention that his conduct does not constitute such misbehavior.
In City of Cleveland v. Heben (1991), 74 Ohio App.3d 568, our court reiterated the standard for conduct that warrants a finding of direct criminal contempt, stating:
 The determination of contempt is left to the sound discretion of the trial judge. However, the accused's guilt must be affirmatively shown in the record and the offending conduct must constitute an imminent threat to the administration of justice. State v. Conliff (1978), 61 Ohio App.2d 185, 15 O.O.3d 309, 401 N.E.2d 469; State v. Treon (App. 1963), 91 Ohio Law Abs. 229, 241, 188 N.E.2d 308, 316; State v. Saltzman (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported. "[T]he administration of justice is best served by restricting the power of summary direct contempt to that conduct which tends to impede, embarrass or obstruct the court in the performance of its function." State v. Conliff, supra, 61 Ohio App.2d at 190-191, 15 O.O.3d at 312, 401 N.E.2d at 474. (Emphasis added.)
See, also, In re Williams, supra.
Here, a review of the transcript shows that Owens, in an apparent attempt to ensure that Juror No. 5 understood the concept of presumption of innocence, stated to the juror: "If anything happened right now and you'd have to make a decision, you'd have to come back not guilty, right?" At that point, the court held a sidebar conference and reminded counsel about a rule which the court had read to counsel prohibiting counsel to ask the veniremen about the kind of verdict they would return. The record further reflects that during his subsequent voir dire of Juror No. 2, Owens stated, "You will make sure that the burden of proof is on the State to prove beyond a reasonable doubt? and Or you will come back with the proper verdict?" Upon the state's objection, the court held a sidebar conference and asked Owens: "Mr. Owens, was that a deliberate act to defy this Court's rules that the Court read to you?" After Owens replied, "Not at all", the court found him in contempt and fined him $100.00.
Our review of the record thus indicates that the court found Owens in contempt when, after being reminded by the court not to inquire of members of the panel what kind of verdict they would return, he inquired whether a "proper verdict" would be returned if the state did not prove the defendant's guilt beyond a reasonable doubt.
Given this state of the record, and mindful that the power of summary direct contempt should be restricted to a conduct that tends to impede, embarrass or obstruct the court in the performance of its functions, we fail to perceive an imminent threat to the administration of justice by Owens' question sufficient to warrant a finding of direct criminal contempt. See Heben, Conliff, and Williams, supra. Rather, we perceive his question as an effort to represent his client's interests by ensuring that the jury understood the notion of presumption of innocence and the state's burden of proof. No factual recitation preceded the question, and no effort existed to influence the juror's thinking about the case in the absence of evidence.
Our decision here is in accordance with other appellate court decisions where the courts have reversed a judgment of direct criminal contempt because of consideration of an attorney's professional responsibilities to protect his or her client's interest. See, e.g., Saltzman, supra (the trial court, after telling Saltzman three times during her voir dire that she had exhausted the subject and instructing Saltzman's co-counsel Hubbard to proceed in Saltzman's place, held Hubbard in contempt when Hubbard asked to state an objection after the court already rejected his prior request; the court of appeals reversed the contempt finding, concluding that the attorneys neither showed disrespect nor obstructed the administration of justice and was only protecting their client's interests); In re Contempt of Rossman (1992), 82 Ohio App.3d 730 (the court reversed the trial court, which found an attorney in contempt when the attorney requested to either preserve objections or to have a sidebar conference, concluding the attorney's statements were neither disrespectful nor disruptive but were intended to protect his client's interests); State v. Schiewe (1996), 110 Ohio App.3d 170 (the trial court found the prosecuting attorney in contempt for disobeying its order prohibiting repetitious testimony; the court of appeals reversed, reasoning that the prosecuting attorney owed his professional responsibility to his client, the state, to present sufficient evidence to sustain its burden of proof and therefore should not be required to violate his duty to his client as the price of avoiding punishment of contempt).
On the basis of the foregoing, therefore, we vacate the finding of contempt.
Judgment of contempt vacated.
It is ordered that appellant recover of appellee his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, J. CONCURS PATRICIA A. BLACKMON, P.J. DISSENTS (See attached Opinion).