THE STATE OF OHIO, APPELLEE, *v.* WILSON ET AL.; DAVIS, APPELLANT.

[Cite as State v. Wilson (1972), 30 Ohio St. 2d 312.]

(No. 71-394—Decided June 28, 1972.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Harvey R. Monck,* for appellee.

*Messrs. Jones, Day, Cockley & Reavis* and *Mr. Crede C. Calhoun,* for appellant.

*Per Curiam.* Appellant's first two propositions of law raise the substantive question whether, on the minimal record presented to us, his conduct is shown to have constituted contempt of court.

During the cross-examination of a defense witness, the assistant prosecuting attorney handed her two papers containing her prior statements which had been marked as state's exhibits for identification. Before counsel could complete his question, appellant interrupted with a request to see the papers. Again, before the judge could complete a ruling which apparently was intended to be that appellant could see them at the proper time, appellant interrupted with a remark that the papers had been identified by the witness and he had the right to see them. In fact, they had not then been identified by the witness.

The very next question asked for the identification, and appellant renewed his request for an examination. That was denied until "the proper time." He asked to address the bench. He was put off until "the proper time." He asked twice again to address the bench. The judge ordered him to "please sit down."

When the witness finally identified her signature, appellant objected and again requested examination of the document. He was ordered to "please sit down." He asked for a continuing objection. He was ordered to "please sit down."

Appellant made three more objections to the questioning, all of which were overruled, and another request to examine. He was ordered three more times to "sit down."

Then a "side bar" commenced at which the court

charged appellant with contempt. Appellant then interrupted the court and was ordered to sit down four more times. Prior to the last time and apparently in a loud voice appellant moved for a mistrial and, *inter alia*, again objected to the use of the statement without examination by him.

When the trial resumed, appellant was ordered to "sit down" three more times. At the close of the cross-examination, he finally received the exhibits, examined them and excused the witness without further questions.

This unfortunate episode constitutes the entire portion of the record before us which could possibly support the finding of contempt. The question is, does it?

The incident described must have been the culmination of previous contentions to which the record alludes, but it does not reveal them. The precise nature of all disruptions by counsel, including inflections, actions and gestures, should have been described in detail to the record.

The record here does show, however, that appellant unnecessarily repeated objections, requests for examination and requests for the maintenance of the record (especially when it was obvious that no interruption or silencing of the reporter occurred or was ordered) and a constant disregard of the court's order to sit down, all of which amounted to disrespect for the court, to disruption of quiet and order, and to actual interruption of the court in the conduct of its business. *Nye* v. *United States* (1941), 313 U. S. 33, 52. That such constituted contemptuous conduct we entertain no doubt.

The integrity of the judicial process demands total deference to the court, particularly on the part of its officers. Respect for the law and obedience to the orders and judgments of the tribunals by which it is enforced lies at the very foundation of our society. No amount of provocation on the part of the judge can be permitted to excuse counsel from the obligation of his oath of office ("I will maintain the respect due to courts of justice and judicial officers"); to excuse him from his duties imposed by

the Code of Professional Responsibility;* or to condone the acts of counsel if in fact they are in themselves contemptuous.

If a judge behaves contumeliously, reprehensible as it may be, such conduct should be made a part of the record, but cannot be corrected by counsel in the courtroom. There are other remedies for transgressions of judicial decorum, none of which is exclusive—such as appellate review, grievance proceedings under our Rules, impeachment and the election process, for example.

In connection with the substantive question of contempt, appellant leans heavily upon the United States Supreme Court cases of *Bloom* v. *Illinois* (1968), 391 U. S. 194; *In re McConnell* (1962), 370 U. S. 230; and *Offutt* v. *United States* (1954), 348 U. S. 11. Although binding upon us, *Bloom* is inapplicable in that it imposes the requirement of a jury trial in contempt matters involving punish-

---

*"Code of Professional Responsibility:

"Duty of the Lawyer to the Adversary System of Justice.

". . .

"EC 7-22 Respect for judicial rulings is essential to the proper administration of justice. . . .

". . .

"EC 7-36 Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties. Although a lawyer has the duty to represent his client zealously, he should not engage in any conduct that offends the dignity and decorum of proceedings. While maintaining his independence, a lawyer should be respectful, courteous, and aboveboard in his relations with a judge or hearing officer before whom he appears. . . .

". . .

"DR 7-106 TRIAL CONDUCT.

"(A) A lawyer shall not disregard . . . a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.

". . .

"(C) In appearing in his professional capacity before a tribunal, a lawyer shall not:

". . .

"(6) Engage in undignified or discourteous conduct which is degrading to a tribunal."

ment equivalent to that which characterizes an offense as "serious," *i. e.*, a confinement for six months or more. Here, appellant does not claim a right to a jury trial and this appeal involves no more than a fine.

Both *McConnell* and *Offutt* represent the exercise of the supervisory authority by the United States Supreme Court over the administration of criminal justice in the federal courts and therefore do not bind us. However, they are highly persuasive but distinguishable. In *McConnell,* counsel merely threatened to pursue a line of questioning forbade by the trial judge unless some bailiff intervened. He never carried out the threat. The court held that one threat did not amount to an obstruction of justice.

In *Offutt,* the judge displayed personal animus and a lack of judicial demeanor, but the contemnor was not excused. The cause was remanded for retrial before a different judge.

To support his final proposition of law relating to procedure, appellant cites, in addition, *Mayberry* v. *Pennsylvania* (1971), 400 U. S. 455, 27 L. Ed. 2d 532, and *Cooke* v. *United States* (1925), 267 U. S. 517.

In *Cooke,* the alleged act of contempt was not committed in open court. It involved language personally derogatory to the judge which was contained in a letter delivered to chambers. *Mayberry* accorded the constitutional requirement of a public trial by another judge to one who participated in extreme vilification, during trial, of the judge who later sentenced him to an 11-to 22-year jail sentence for his clearly contemptuous conduct.

The instant case, of course, involves no vilification of the judge and no attack personal or derogatory to the judge. If anything of that nature did occur, the record brought to us does not show it. The following statement by Chief Justice Taft in the opinion of *Cooke, supra* (267 U. S. 517, at 534), furnishes a complete answer to appellant's final proposition:

"To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or dis-

respect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary. It has always been so in the courts of common law and the punishment imposed is due process of law. Such a case had great consideration in the decision of this court in *Ex parte Terry,* 128 U. S. 289. It was there held that a court of the United States upon the commission of a contempt in open court might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law.''

That statement is the law today, even in the face of *Mayberry* and *Bloom,* subject of course to the modifications imposed by those two cases when the circumstances of the particular situation compel them. See, also, *In re Lands* (1944), 146 Ohio St. 589, and *Lowe* v. *State* (1859), 9 Ohio St. 337.

In light of the foregoing, it is immaterial to the regularity of appellant's conviction that the trial court made additional findings of contempt after imposing sentence (and spread the same upon the record) which are not clearly supported by the record. It is also immaterial that such practice is to be condemned.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., SCHNEIDER, HERBERT and LEACH, JJ., concur.

CORRIGAN, STERN and BROWN, JJ., dissent.

STERN, J., dissenting. I dissent on the ground that the scant record provided this court by counsel for both sides is insufficient to clearly show the courtroom temper of the parties on the day in question. I cannot permit myself

to read into this record something which is not clear on its face.

I have no argument with the facts as related in the majority opinion, but I fail to see how the questioned conduct of attorney Davis, who was bent upon defending the constitutional rights of two clients in a first degree murder trial, can constitute direct, criminal contempt. The barren record does not support a conclusion that appellant either intended to or did exhibit "conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." Paragraph one of the syllabus of *Windham Bank* v. *Tomaszczyk* (1971), 27 Ohio St. 2d 55.

Although appellant did disregard repeated orders of the court to "sit down," mere disobedience of an order *of this nature* does not necessarily constitute contempt. To so hold would be to ignore the tense atmosphere of a criminal trial in a capital case, and would impose upon counsel an onerous burden of personal caution which could impede his performance of the duty to which he devotes himself.

Had appellant's conduct been such as to amount to contempt, it could not be excused by judicial errors or improprieties on the part of the court. If the evidence supported a finding that appellant's conduct was contemptuous of the trial court, a fine of $500 and a sentence to five days in jail for the contemnor, who is an officer of the court, would not seem unduly excessive. However, while appellant may have been overzealous at times in asserting and endeavoring to protecting his clients' rights, I feel that the record will support no conclusion other than that such conduct constituted a good-faith effort to represent his clients' interests, without impeding the functions or offending the dignity of the court. In my view, appellant's conduct, as demonstrated by the record before us, did not constitute a direct, criminal contempt of the court, and the judgment should be reversed.

CORRIGAN and BROWN, JJ., concur in the foregoing dissenting opinion.