IN RE MCGINTY.

---

(No. 50162—Decided April 7, 1986.)

*Ellen S. Mandell,* for appellee.

*John T. Corrigan,* prosecuting attorney, and *Timothy J. McGinty,* for appellant.

KRUPANSKY, J. Appellant, Timothy J. McGinty ("appellant"), is an Assistant Prosecuting Attorney for Cuyahoga County. Appellee, the Honorable Burt Griffin ("the court/Judge Griffin") is a judge of the Court of Common Pleas of Cuyahoga County. In this appeal, appellant attacks the validity of the court's order finding appellant in contempt of court. The relevant evidence, as derived from the transcript before this court, may be summarized as follows:

On April 11, 1985, Judge Burt Griffin was presiding over a criminal trial entitled *State of Ohio* v. *Johnny Mack Parker,* case No. CR-194548; appellant was one of two assistant county prosecutors representing the state of Ohio. Shortly before noon, a witness subpoenaed by defense counsel and arrested by the sheriff pursuant to a court-issued capias was brought into the courtroom whereupon the following proceedings were had between court and counsel:

"THE COURT: Is this gentlemen [*sic*] Curtis Wilkins? Mr. Wilkins, you were subpoenaed to come down here, okay? Did you receive your subpoena?

"MR. WILKINS: No, I didn't receive it until I got in this morning, and I didn't want to come — when I come in this morning it was too late to come, and I had been out all night.

"THE COURT: Okay, Well, you are here now?

"MR. WILKINS: Yes.

"THE COURT: Prepared to testify this afternoon in this case?

"MR. WILKINS: Prepared to say what I have got to say.

"THE COURT: The lawyers are back here and Mr. Wiley is this gentleman here in the light suit, and he subpoenaed you in so you should go ahead and talk to him.

"These gentlemen here, gentleman in the grey suit and gentleman in the blue suit, whatever the suit is, they are the prosecutors [Mr. Jones and Mr. McGinty].

"MR. WILKINS: Yes.

"THE COURT: They will want to talk to you also, I'm sure.

"MR. WILKINS: Yes.

"THE COURT: So if you talk to Mr. Wiley first and make yourself available to the prosecutor, we will start again at 1:30 this afternoon.

"MR. WILKINS: Yes.

"THE COURT: Okay, Thank you very much."

When court resumed after the luncheon recess, Judge Griffin indicated he wanted to have some type of discussion with all counsel before the jury or the

witnesses were brought into the courtroom. Judge Griffin stated as follows:

"THE COURT: I was concerned *with what I heard going on* when I left to go for lunch, and I realize I got in at the tail end of this. But when I got there, got out into the hallway I heard all these loud voices coming from one of the private conference rooms outside. *And I thought I heard Mr. McGinty saying to Mr. Wilkins something to the effect 'He had you arrested, remember that,'* or something to that effect. *And you all were in there waiting, apparently, to talk while I had instructed the witness to go off and talk with Mr. Wiley.*

*"And then when he was finished with Mr. Wiley to talk to you two,* and I am concerned about what has happened as a result of that *and about what effect it may have on this trial.*

"So I realize I have not heard from the people directly participating in it. I would like to know at this point what really happened." (Emphasis added.)

At that point the court elicited explanations from both prosecutors and defense counsel.

The first individual to speak was Mr. John Jones, Assistant County Prosecutor. Mr. Jones acknowledged the court's direction that the witness was to speak to defense counsel first and stated:

"MR. JONES: * * * [the fact that] we were to talk to him *second* rather greatly impinged upon our lunch hour. And we think if he [the witness] has something to say he could have said it to both of us." (Emphasis added.)

Mr. Jones went on to admit that he and appellant walked in on the private conversation between defense counsel and the witness. At that point, appellant began to explain his motivation for the intrusion.

Appellant explained as follows:

"MR. McGINTY: I have a search warrant going on this afternoon, and I had to meet with some policeman about effecting that search."

Defense counsel spoke next and stated as follows:

"MR. WILEY: Your Honor, I was in the conference room interviewing the witness when Mr. McGinty came in initially and asked to interview the witness along with myself. I objected.

"He then indicated to the witness that, well, stated in a rather loud voice after I asked him to leave several times. I asked Mr. Jones to take him out. *He indicated to the witness that we had or I had had him arrested to come down here, that if he were the witness he would go get a lawyer and file a lawsuit against me for bringing him down here.*

"THE COURT: Mr. McGinty said that to the witness?

"MR. WILEY: *Mr. McGinty said that to the witness.* Mr. McGinty and I had several heated words after that. *I was making efforts to get him to leave so that I can talk with the witness. He told me he didn't want to give up his lunch period.*

"Well, I gave up my lunch hour. I didn't go to my office in order to do this. *And frankly it did upset the witness.* I attempted to explain to him that this is not a normal side of our legal justice system.

"I was rather embarrassed in having that type of display before a witness.

"I was further extremely dismayed at Mr. McGinty's behavior not only directed towards me, but it was to the point where he was threatening to fight me if I wanted to.

"THE COURT: To fight you?

"MR. WILEY: To fight me physically, and this is again before the witness, because I had asked him to leave. And I have never experienced anything like this in practicing law in ten years." (Emphasis added.)

The prosecutors disputed the accuracy of defense counsel's description of events and all counsel continued in their efforts to convince the court of their points of view.

Appellant continued in his denial of

any description which portrayed him as utilizing an aggressive or threatening tone or manner; however, appellant admitted to the entrance into defense counsel's private interrogation of the witness. Defense counsel questioned appellant with regard to the false arrest issue as follows:

"MR. WILEY: Did you not say to the witness that if you. were he, you would get an attorney and sue me?

"MR. McGINTY: *That's correct, and I am not under cross-examination.*" (Emphasis added.)

The court's finding is reflected in its journal entry which follows in full:

"Based upon hearing in open court on April 11, 1985, the Court finds:

"In the presence of the Court and immediately outside the Courtroom in a conference room adjacent to the courtroom Assistant County Prosecutor Timothy McGinty obstructed justice in that he deliberately interceded in the private interrogation by defense counsel of a witness, Calvin Wilkins, accused defense counsel of having the witness arrested, and suggested to the witness that it would be appropriate for him to sue defense counsel. These actions of Mr. McGinty were in violation of the Court's instruction that the witness first talk to defense counsel and thereafter to the prosecutor, *interfered with the defendant's constitutional rights to subpoena witnesses and to effective representation of counsel, and were demeaning to the orderly administration of justice.*

"Accordingly, Timothy McGinty is found to be in contempt of court for willfully violating a direct order of the court and for obstructing justice.

"Mr. McGinty is hereby removed from further participation as counsel in Criminal Case 194,548 and is fined $100, which fine shall be paid by Monday, April 15, 1985 at 4:30 p.m." (Emphasis added.)

Appellant filed this timely appeal.

Appellant assigns six errors relative to his contempt citation. Assignments of Error Nos. I, II, III and IV will be discussed together. They state as follows:

"*Assignment of Error No. I*: When the trial court arbitrarily declared the Assistant Cuyahoga County Prosecutor guilty of what constituted an allegation of indirect criminal contempt, it erred by its denial of that parties [*sic*] due process rights of: 1.) notice; 2.) an opportunity to prepare a defense; 3.) informing the accused of the nature of the charges and in writing; 4.) the opportunity to be fully heard and defend oneself; 5.) the right to counsel; 6.) the right to present witnesses and to procure their attendance; 7.) the right to confront the witnesses against him by cross-examination; 8.) the right to have those witnesses testify under oath and penalty of perjury; 9.) a public trial; 10.) not to be mislead by a lack of notice in attempt [*sic*] cause one to testify against himself; and, [*sic*] 11.) the right to fundamental fairness in a criminal proceeding.

"*Assignment of Error No. II*: The trial court erred in finding the Assistant Cuyahoga County Prosecutor guilty of willfully violating a direct order of the court when there was never a court order to violate nor evidence [of] an intent to violate a court order.

"*Assignment of Error No. III*: The evidence is sufficient [*sic*] to sustain a conviction for the crime of contempt of court.

"*Assignment of Error No. IV*: The trial court erred by finding the Assistant Cuyahoga County Prosecutor guilty of criminal contempt and imposing harsh sanctions and a fine without proof beyond a reasonable doubt."

Appellant contends he was charged with indirect criminal contempt which requires adherence to certain due process requirements. Appellant argues the court's failure to abide by these procedural prerequisites renders the contempt citation invalid.

In order to assess the validity of ap-

pellant's claim it is necessary to examine the various categories of contempt.

The first distinction is between criminal and civil contempt which are distinguished by the character and purpose of the punishment issued to the contemnor. *Brown* v. *Executive 200, Inc.* (1980), 64 Ohio St. 2d 250, 18 O.O. 3d 446, 416 N.E. 2d 610. The purpose of civil contempt citation is to coerce whereas the purpose of criminal contempt is to punish:

"Therefore, to determine if the sanctions in the instant cause were criminal or civil in nature, it is necessary to determine the purpose behind each sanction: was it to coerce the appellees to obey the consent judgment decree, or was it to punish them for past violations?" *Id.* at 254, 18 O.O. 3d at 449, 416 N.E. 2d at 613.

In the case *sub judice,* the court fined appellant and expelled him from the courtroom. These actions had no coercive purpose; the citation was issued to punish appellant for his "completed act of disobedience." *Id.*

Criminal contempt may be direct or indirect. Indirect contempt is that which is committed outside the presence of the court. *State* v. *Jaffrin* (App. 1956), 74 Ohio Law Abs. 577, 2 O.O. 2d 486, 136 N.E. 2d 436. *Direct contempt is an act "of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."* (Emphasis added.) R.C. 2705.01.

In the case *sub judice,* appellant's actions constitute direct contempt since they were witnessed by Judge Griffin in the conference room adjacent to the courtroom and obstructed the administration of justice. *In re Estate of Wright* (1956), 165 Ohio St. 15, 59 O.O. 37, 133 N.E. 2d 350; the penalty given to appellant was "punitive, in vindication of the court's authority." *Gompers* v. *Buck Stove & Range Co.* (1911), 221 U.S. 418, 448. Thus, the criminal contempt powers of the court were utilized.

Direct contempt may be summarily punished. R.C. 2705.01 states in full:

"*A court, or judge at chambers, may summarily punish* a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." (Emphasis added.)

The facts of the case *sub judice* fit squarely within the above-quoted section of R.C. 2705.01. Thus, the procedural rights appellant requests are inapplicable in the case since appellant was found in direct criminal contempt for the following acts:

1. intruding into defense counsel's conference with his witness;

2. accusing the defense counsel of having the witness arrested;

3. interfering with the defendant's right to subpoena witnesses; and

4. intimidating defense counsel so as to interfere with the defendant's right to effective assistance of counsel.

The acts were more than a display of ill-mannered conduct; they constituted a threat to the administration of justice. *State* v. *Conliff* (1978), 61 Ohio App. 2d 185, 15 O.O. 3d 309, 401 N.E. 2d 469. Appellant's direct disregard of the court's order to interview the witness after defense counsel's interview, appellant's intimidation of both defense counsel and the witness, and appellant's attempt to create hostility in the witness against defense counsel posed an "imminent threat to the administration of justice." *Id.* at the syllabus. Since the fact of appellant's presence, the tone and volume of his voice, and the substance of his remarks were personally observed by the judge, the acts qualify as direct contempt.

The fact that the court requested explanations from the parties does not alter the direct nature of the acts constituting the contempt of court. In *State, ex rel. Seventh Urban, Inc.,* v. *McFaul* (1983), 5 Ohio St. 3d 120, 5 OBR 255, 449 N.E. 2d 445, a physical confronta-

tion occurred in a courtroom of this court, the Eighth District Court of Appeals, when none of the judges was present. The confrontation caused a five- to ten-minute delay in the scheduled hearing. Since none of the judges witnessed the confrontation, this court was compelled to take evidence before finding one of the parties in *direct criminal contempt.* In the case *sub judice,* Judge Griffin heard the confrontation which caused him to enter the scene during the progress of the acts as appellant confronted defense counsel and his witness; thus, the court actually witnessed the contemptuous acts.

*Seventh Urban* has even greater significance in regard to what actions constitute an obstruction of justice. In that case, the court relied on the fact that the confrontation in the courtroom caused a five- to ten-minute delay in the court's proceedings. This brief delay interfered with the actions of the court and obstructed justice. In the case *sub judice,* the impediment to the administration of justice was much graver.

Appellant's actions interfered with two of the most important fundamental constitutional rights afforded by our system of criminal justice, *viz.,* (1) the right to subpoena witnesses and (2) the right to the effective assistance of counsel. Appellant attempted to instill resentment and hostility in the witness; this is a direct interference with the right to compulsory process. Moreover, by thoroughly disrupting defense counsel's conference with the witness, appellant obstructed the criminal defendant's (Parker's) inviolate right to effective assistance of counsel. Appellant's actions in gross violation of defendant's basic procedural rights render the obstruction to justice in *Seventh Urban* pale by comparison. In the case *sub judice,* the court did not err in summarily punishing appellant in an effort to vindicate the authority of the court and the integrity of the judicial system.

Appellant's assertion on appeal that he was unaware of the court's order concerning the proper sequence of the witness' interrogation is not only contradicted by his co-counsel's comments on the record but also by the record itself. Appellant had ample opportunity at the time of the discussion to express his ignorance of the order but failed to do so; he is precluded from arguing this for the first time on appeal.

Appellant maintains the insufficiency of the evidence against him and the lack of culpable intent. The recent words of the Ohio Supreme Court in *State, ex rel. Seventh Urban, Inc.,* v. *McFaul, supra,* a contempt case, are particularly appropriate:

"A person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts. *State* v. *Johnson* (1978), 56 Ohio St. 2d 35, 39 [10 O.O. 3d 78]." *Id.* at 123, 5 OBR at 257, 449 N.E. 2d at 448.

The natural, reasonable and probable consequence of appellant's voluntary acts of entering the conference room, precipitating a shouting match, intimidating defense counsel and creating hostility in the witness against defense counsel by raising a dubious issue of false arrest constitutes an obstruction to the administration of justice, *i.e.,* interferes with the defendant's right to subpoena witnesses and deprives defendant of the effective assistance of counsel.

In criminal contempt cases proof beyond a reasonable doubt is required. *Brown* v. *Executive 200, Inc., supra.* Courts have overruled contempt citations where the citing court has specifically applied a less stringent standard on the record. In the case *sub judice,* there is no indication the court applied any standard other than proof beyond a reasonable doubt. More importantly, the acts for which appellant was found in contempt (1) were observed by the court, (2) were admitted by appellant,

and (3) upon review, are demonstrated beyond a reasonable doubt.

Appellant's fifth assignment of error states as follows:

"*Assignment of Error No. V*: The trial court abused its discretion to the extreme prejudice to [*sic*] the people of the state of Ohio when it arbitrarily expelled the prosecuting attorney from the courtroom in mid-trial without due cause."

Appellant was properly found in direct criminal contempt of court. He was fined $100, admittedly not a major fine given today's economic climate. In addition, he was expelled from the courtroom. Appellant's co-counsel finished trying the case. The defendant was found guilty and has appealed his conviction. The court did not err in imposing this sanction.

As explained above, the purpose of a criminal contempt penalty is to vindicate the authority of the court. Appellant's flagrant disregard of a court order, his complete reluctance to acknowledge any wrongdoing and his designation of the charges as "preposterous" are a clear indication appellant was not proceeding in the deferential manner required of an officer of the court. Under these circumstances the court did not err in imposing a sanction upon appellant which would be effective in instilling the respect and proper decorum required of an attorney representing any party in a court of law.

Appellant's final assignment of error states as follows:

"*Assignment of Error No. VI*: The trial court erred in failing to refer the handling of the alleged contempt to a neutral judge."

In support of this contention appellant directs this court's attention to situations where a judge was personally insulted by a party to a trial. This situation did not arise in the case *sub judice.* In a situation where the affront is personal to a judge, it is proper for the trial judge to refer the contempt charge to another judge since the original judge's objectivity may be questioned.

To bolster his argument appellant attempts to supplement the record by submitting a narrative of the "tense moments" occurring earlier in the trial. These alleged incidents are not in the record nor do they have any relation to the proceedings properly in the record.

By both statutes and judicial decision a court is empowered to summarily punish contempt personally observed by the court. This inherent power may extend beyond the legislative grants of authority. *Cincinnati* v. *Cincinnati District Council 51* (1973), 35 Ohio St. 2d 197, 64 O.O. 2d 129, 299 N.E. 2d 686.

The order of appellee is affirmed and appellant is ordered to pay the $100 fine which was stayed during the pendency of this appeal.

*Judgment affirmed.*

PARRINO, C.J., and NAHRA, J., concur.