**In re CONTEMPT OF ROSSMAN.**

[Cite as *In re Contempt of Rossman* (1992), 82 Ohio App.3d 730.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 60717.

Decided Sept. 8, 1992.

*Robert A. Dixon* and *David L. Doughten,* for appellant.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, for appellee.

NAHRA, Presiding Judge.

Alan Rossman appeals from the trial court's decision holding him in contempt of court. For the reasons set forth below, we reverse.

Appellant was one of three attorneys representing Cheryl Lessin in her well-publicized flag-burning trial.[1]  During voir dire, the following interchange took place on the record:

"MR. ROSSMAN: Is there anything about the fact that she may have burned the flag, that is a problem for you?

"THE COURT: Objection sustained.  All the jurors were individually asked that question by the Court.

"MR. ROSSMAN: Judge, I—

"THE COURT: That is my ruling.

"MR. ROSSMAN: I beg to differ.  They weren't specifically asked.

"THE COURT: I asked each individual juror in light of the facts that I have given to them if any of them had any difficulty in that area and each juror said, 'No.'  Did I misunderstand anybody's answer in that regard?

"MR. ROSSMAN: Judge—

"THE COURT: Don't argue with me, Mr. Rossman.

"MR. ROSSMAN: Judge, I'd like to put something on the record.

"THE COURT: Don't argue with me.  I have indicated that we'll do that at recess.  You may proceed.

"MR. ROSSMAN: Judge, I would like to ask—

"THE COURT: Don't argue with me.  That's a direct order.

"MR. ROSSMAN: Then can I make a comment at sidebar?

"THE COURT: You are in contempt of court."

The court fined Rossman $50 and sentenced him to one day in jail, with the jail time to be waived if the fine was paid within four days.  Appellant brought this timely appeal, assigning one error as follows:

"The trial court erred in holding the appellant in contempt of court."

Contempt committed in the presence of the court is direct contempt; contempts committed outside the presence of the court are punishable as indirect contempts.  R.C. 2705.02.  R.C. 2705.01 provides that "[a] court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."  "The reason for authorizing the court to summarily punish direct contempt without the necessity of notice and an opportunity to be heard is that unless such an open threat to the orderly procedure of the court is not

---

1.  Reporter's Note: An appeal to the Supreme Court of Ohio is pending in No. 92–847, *State v. Lessin.*

[*sic*] instantly suppressed and punished, demoralization of the court's authority may follow." *State v. Conliff* (1978), 61 Ohio App.2d 185, 188, 15 O.O.3d 309, 311,. 401 N.E.2d 469, 472.

Contempts are further categorized as civil or criminal depending upon the purpose of the sanction imposed. Where the sanction is intended to coerce compliance with the court's orders, the contempt is civil. Where the sanction is intended to punish the contemnor, the contempt is criminal. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 204–205, 15 O.O.3d 221, 222–224, 400 N.E.2d 386, 389–390. Because this case involves conduct in the presence of the court and the sanction was punishment, this contempt is direct criminal contempt.

A person must be proven guilty beyond a reasonable doubt to be found in direct criminal contempt of court. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 251, 18 O.O.3d 446, 447, 416 N.E.2d 610, 611–612. To constitute contempt, "[t]he alleged misbehavior must require immediate punishment to preserve the Court's authority, take place in the presence of the judge and obstruct the administration of justice by delaying, hindering or influencing a pending case. *In the Matter of Lands* (1946), 146 Ohio St. 589 [33 O.O. 80, 67 N.E.2d 433]; *State v. Treon* (App.1963), 91 Ohio L.Abs. 229, 240 [188 N.E.2d 308, 315]." *State v. Saltzman* (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported, at 8. Furthermore, "[d]isplays of ill-mannered conduct are not summarily punishable under the law of direct contempt unless they pose an imminent threat to the administration of justice." *State v. Conliff, supra,* syllabus. Therefore, we must determine whether appellant's conduct obstructed the administration of justice and required immediate punishment to preserve the authority of the court.

In *Cleveland v. Heben* (1991), 74 Ohio App.3d 568, 599 N.E.2d 766, this court affirmed the trial court's decision holding an attorney in contempt. In that case, the attorney unsuccessfully attempted to convince the court that he was too sick to proceed with a trial. The court conducted a hearing but did not believe that Heben was too sick to proceed. The court instructed him not to mention his illness to the jury.

Shortly thereafter, during suppression proceedings, Heben said that he was too ill to proceed, and that he was going to the bathroom. The court ordered him back. Heben then admonished the judge to act professionally and. told the judge in front of the jury that Heben had no respect for the judge.

The court held Heben in contempt because it believed that Heben's actions were intended to delay the proceedings and to impede the administration of justice. His conviction was affirmed. Compare *State v. Conliff, supra*

(contempt based on a defendant's single sarcastic comment to the judge after trial was reversed because it did not obstruct justice).

In *In re McGinty* (1986), 30 Ohio App.3d 219, 30 OBR 377, 507 N.E.2d 441, this court affirmed a finding of direct contempt arising out of the following conduct by an assistant county prosecutor:

"(1) intruding into defense counsel's private conversation with his witness inside a conference room adjacent to the courtroom, (2) accusing defense counsel of having the witness arrested, thereby attempting to create hostility in the witness against defense counsel, (c) interfering with the defendant's right to subpoena witnesses, and (4) intimidating defense counsel so as to interfere with the defendant's right to effective assistance of counsel." Paragraph one of the syllabus.

This court found that McGinty's acts "were more than a display of ill-mannered conduct; they constituted a threat to the administration of justice. *State v. Conliff* (1978), 61 Ohio App.2d 185, 15 O.O.3d 309, 401 N.E.2d 469. Appellant's direct disregard of the court's order to interview the witness after defense counsel's interview, appellant's intimidation of both defense counsel and the witness, and appellant's attempt to create hostility in the witness against defense counsel posed an 'imminent threat to the administration of justice.' *Id.* at the syllabus." *McGinty*, 30 Ohio App.3d at 223, 30 OBR at 380–381, 507 N.E.2d at 445.

See, also, *State v. Wilson* (1972), 30 Ohio St.2d 312, 59 O.O.2d 379, 285 N.E.2d 38, certiorari denied (1972), 409 U.S. 1047, 93 S.Ct. 522, 34 L.Ed.2d 499 (contempt affirmed where attorney's unnecessary repetition of objections and requests, and disregard of the court's repeated orders to be seated interrupted the business of the court).

In *State v. Saltzman, supra,* this court reversed contempt findings for two attorneys. In that case, the trial judge told attorney Saltzman three times during her voir dire that she had exhausted the subject and to move on. Later, he stated that a whole day of trial time had been wasted. After a sidebar conference, the judge instructed Saltzman's co-counsel, Richard Hubbard, to proceed instead of Saltzman. Hubbard asked to state an objection to voir dire out of the hearing of the jury, which the judge would not allow. The judge also refused to allow Hubbard to state the basis of his motion for a mistrial on the record, and refused to allow Saltzman to take part in the trial. When Hubbard again attempted to make an objection, the court held him in contempt. Saltzman was told to proceed, was not allowed to make a phone call, and was found in contempt when she refused to proceed.

This court reversed. It found that the attorneys did not show disrespect and did not obstruct the administration of justice, but were only protecting the

interests of their clients. It stated that Saltzman's voir dire was extensive, but not improper. It stated that it could not test the validity of the court's rulings, because the attorneys were not allowed to put their objections on the record. Because Saltzman's and Hubbard's actions were not disrespectful or disruptive, the court found the contempt findings were unwarranted.

The facts of this case are more similar to the facts of *Saltzman* where contempt was reversed, than to *Heben, McGinty,* or *Wilson* where contempts were affirmed. In this case, the court objected to a question posed by Rossman to an individual juror, which was the same question which had been posed by the judge to the jurors as a group. Rossman subsequently explained that the question posed to the group was not sufficient for him to determine individual biases and to exercise his preemptory challenges.

Although the judge characterized Rossman's statements as argument, the record reflects that Rossman's conduct was neither disrespectful nor disruptive, and that his intention was to protect his client's interests by making objections on the record. His statements consisted of courteous requests to preserve objections or have a sidebar conference. The record does not reflect that he impugned the judge or the judicial process, that he made a scene, as in *Heben* and *Wilson,* or that he intended to delay the proceedings. The record creates reasonable doubt that appellant's conduct obstructed the administration of justice. Appellant's assignment of error is sustained.

*Judgment reversed.*

JAMES D. SWEENEY, J., concurs.

KRUPANSKY, J., dissents.

KRUPANSKY, Judge, dissenting.

I respectfully dissent from my brethren in the case *sub judice* reversing the trial court vindicating Alan Rossman of direct contempt for the reason that the facts herein as applied to the law governing this issue clearly reflect appellant was in direct contempt of the trial court by obstructing the administration of justice thereby impugning the dignity and decorum of the trial court along with the integrity of the entire judicial process. There is absolutely no doubt appellant's antics in the courtroom before the jury obstructed the administration of justice by interfering with the judicial process of the voir dire examination violating every element of R.C. 2705.01.

The trial judge had instructed appellant not to pursue his line of questioning at the voir dire because an objection thereto had been sustained after the matter had been addressed at a sidebar conference. Appellant disregarded the instruction. When reminded of the trial court's ruling by the judge,

appellant attempted to justify his actions. The trial court again stated its ruling; appellant tried to pursue the matter further. *The trial court then told appellant not to argue with the court.* Appellant did not return to his voir dire, however, but continued to impose his will and insisted something be put on the record. The trial court stated, *"I have indicated that we'll do that at recess.* You may *proceed."* (Emphasis added.) Appellant still did not return to his voir dire, but again confronted the court. The trial court told appellant one more time not to argue: "That's a direct order." Appellant thereupon again confronted the trial court imposing his will with the interrogatory, "Then can I make a comment at sidebar?" Finally, at that point, the trial court told appellant he was in contempt of court.

Thereafter, the trial court stopped the voir dire examination and, at a sidebar conference, the trial court explained the action taken against appellant as follows:

"You are held in direct contempt of court *because I instructed you not to argue with me.* I told you that *you had an opportunity to at sidebar* [*sic*] for it to be done and *I directed you three times not to argue with me in front of the jury."* (Emphasis added.)

A court is charged with the *duty* to maintain order in the courtroom to expedite the judicial proceedings being held therein. Attorneys, as officers of the court, are required to understand this obligation is not within their prerogative. Their obligation is to represent their clients by selecting jurors under the auspices of the court and primarily deal with the evidence. When attorneys fail to realize their obligation and insist on imposing their will and impinging upon the court's duty to maintain order thereby obstructing the administration of justice, they must realize the sanction of contempt awaits in the wings to curb their unacceptable behavior. The sanction of contempt is the *only* tool some attorneys understand by which a court can maintain order in the courtroom.

A court's power to impose the sanction of direct contempt is governed by R.C. 2705.01, which states as follows:

"A court, or judge at chambers, may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge *as to obstruct the administration of justice."* (Emphasis added.) See, *e.g., State v. Kilbane* (1980), 61 Ohio St.2d 201, 15 O.O.3d 221, 400 N.E.2d 386. Cf. *Midland Steel Prod. Co. v. U.A.W. Local 586* (1991), 61 Ohio St.3d 121, 573 N.E.2d 98; *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870.

A court is thus empowered by both the statute and judicial decisions to summarily punish contempt personally observed by the court. *In re McGinty* (1986), 30 Ohio App.3d 219, 30 OBR 377, 507 N.E.2d 441.

Appellant contends all three elements of the crime of contempt were not present in the exchange between himself and the court; therefore, the finding of contempt was improper. This contention is unpersuasive and specious. The record of the case *sub judice* shows appellant's actions toward the court constituted a textbook case of contumacious behavior resulting in contempt for the court before the jury since appellant's actions were improper, amounted to an obstruction of the administration of justice and were intentional.

A review of the record clearly shows appellant refused to accept the trial court's ruling on the state's objection to his line of questioning, repeatedly challenged the judge's authority before the jury, and was not content to wait to make his record as was designated by the trial court at the sidebar. Rather, appellant failed to comply with a direct order of the trial court to *proceed* with the voir dire after being told three times to do so.

The majority opinion relies on several cases in support of the contention that appellant's behavior in the case *sub judice* was simply "ill-mannered"; therefore, appellant's behavior was not a proper ground for contempt.

In particular, the majority opinion cites this court's decision in *Cleveland v. Heben* (1991), 74 Ohio App.3d 568, 599 N.E.2d 766, as support for its reversal of the trial court's finding of contempt in the case *sub judice*. In *Heben*, however, after receiving a written statement by an examining physician and despite the *testimony* of the examining physician, an impartial witness,[2] that counsel was *too ill* to proceed with trial, the trial court ordered counsel to proceed. Counsel, angered at the court's lack of empathy to his physical illness, made the *remark* that he "had no respect for" the court. The trial court found counsel to be in contempt of court, stating as follows:

"Let the record indicate that the Court has held Mr. Heben in contempt of court *because he made a derogatory statement*, hopped up from his seat, went out in the hallway and the Court directed the bailiffs to bring him back." (Emphasis added.)

This court upheld the trial court's contempt citation stating counsel's *remark* was sufficient to support the trial court's finding of contempt since it "*tended* to *embarrass* the court's *performance of its functions* in the administration of justice." (Emphasis added.) *Id.* The *Heben* decision made absolutely no reference to the statutory requirement that the conduct must "*obstruct* the administration of justice" to be punishable. In contrast, in the case *sub judice* the trial court explained appellant was held in contempt because he did not proceed when ordered three times to do so. It is therefore difficult to understand why the behavior in *Heben*, *i.e.*, making a derogatory

---

**2.** The doctor testified she had no previous contact with the contemnor.

remark, was deemed to be worthy of summary punishment while the behavior demonstrated in the case *sub judice, i.e.,* failure to proceed with trial after being given a direct order to do so, is not.

*State v. Saltzman* (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported, also relied upon by the majority opinion, is similarly distinguishable. In *Saltzman,* the finding of contempt was reversed on appeal; however, the trial court *refused absolutely* to allow the attorneys to place their objections and the reasons therefor on the record and afforded them no opportunity to do so. It should also be noted the jury was not present during these proceedings.

These facts do not exist in the case *sub judice.* The trial court had already agreed to let appellant make a record of his objections outside the hearing of prospective jurors. Appellant simply chose not to proceed with the voir dire; rather, he chose to argue with the trial court in front of the prospective jurors and to delay the proceedings unnecessarily. These antics are not only "ill-mannered" but they are "misbehavior" before the court and in direct defiance of a court order to proceed. Thus, these facts make the case *sub judice* analogous to the facts of *State ex rel. Seventh Urban, Inc. v. McFaul* (1983), 5 Ohio St.3d 120, 5 OBR 255, 449 N.E.2d 445, in which this court's finding that the appellants were in contempt of court was upheld by the Ohio Supreme Court since appellants' behavior prevented a judicial hearing from proceeding as scheduled.

In *State v. Wilson* (1972), 30 Ohio St.2d 312, 59 O.O.2d 379, 285 N.E.2d 38, the Ohio Supreme Court affirmed the trial court's finding the appellant was *guilty* of direct contempt and made the following pertinent observations regarding his behavior:

"The record here does show, however, that *appellant unnecessarily repeated* objections, requests for examination and *requests for the maintenance of the record (especially when it was obvious that no interruption or silencing of the reporter occurred or was ordered) and a constant disregard of the court's order* to sit down, all of which *amounted to disrespect for the court,* to disruption of quiet and order, *and to actual interruption of the court in the conduct of its business. Nye v. United States* (1941), 313 U.S. 33, 52[, 61 S.Ct. 810, 817, 85 L.Ed. 1172, 1177]. That such constituted contemptuous conduct we entertain no doubt.

"*The integrity of the judicial process demands total deference to the court,* particularly on the part of its officers. Respect for the law and *obedience to the orders* and judgments of the tribunals by which it is enforced lies [*sic*] at the very foundation of our society. No amount of provocation on the part of the judge can be permitted to excuse counsel from the obligation

of his oath of office ('I will maintain the respect due to courts of justice and judicial officers'); to excuse him from his duties imposed by the Code of Professional Responsibility;* or to condone the acts of counsel if in fact they are in themselves contemptuous." (Emphasis added.) *State v. Wilson, supra,* 30 Ohio St.2d at 314–315, 59 O.O.2d at 380–381, 285 N.E.2d at 40.

The court in *Wilson,* by means of the asterisk in the above-quoted portion of its opinion, cited the following at 315, 59 O.O.2d at 380–381, 285 N.E.2d at 40:

" 'Code of Professional Responsibility:

" 'Duty of the Lawyer to the Adversary System of Justice.

" ' * * *

" 'EC 7–22 Respect for judicial rulings is essential to the proper administration of justice.  * * *

" ' * * *

" 'EC 7–36 Judicial hearings ought to be conducted through dignified and orderly procedures designed to protect the rights of all parties.  Although a lawyer has the duty to represent his client zealously, *he should not engage in any conduct that offends the dignity and decorum of proceedings.*  While maintaining his independence, a lawyer should be respectful, courteous, and aboveboard in his relations with a judge or hearing officer before whom he appears.  * * *

" ' * * *

" 'DR 7–106 TRIAL CONDUCT.

" '(A) *A lawyer shall not disregard * * * a ruling of a tribunal made in the course of a proceeding,* but he may take appropriate steps in good faith to test the validity of such rule or ruling.

" ' * * *

" '(C) In appearing in his professional capacity before a tribunal, a lawyer *shall not* :

" ' * * *

" '(6) *Engage in undignified or discourteous conduct* which is degrading to a tribunal.' " (Emphasis added.)

In the case *sub judice,* appellant's contumacious behavior in direct defiance of a court order to proceed with trial forced the trial court to justify its ruling, reprimand appellant several times, and eventually to *halt* the judicial process of the voir dire in order to reestablish control of the proceedings.  This "misbehavior" on the part of Rossman in the presence of the court caused the delay of the trial which was obviously an "obstruction of the administration of justice."  *State ex rel. Seventh Urban, Inc. v. McFaul, supra.*

"As explained above, the purpose of a criminal contempt penalty is to vindicate the authority of the court. *Appellant's flagrant disregard of a court order,* his complete *reluctance to acknowledge any wrongdoing* and his designation of the charges as 'preposterous' *are a clear indication appellant was not proceeding in the deferential manner required* of an officer of the court. Under these circumstances the court did not err in imposing a sanction upon appellant which would be effective in instilling the respect and proper decorum required of an attorney representing any party in a court of law." (Emphasis added.)

*In re McGinty, supra,* 30 Ohio App.3d at 225, 30 OBR at 382–383, 507 N.E.2d at 447.

The majority in the case *sub judice* labels appellant's contemptuous behavior "ill-mannered." Perhaps after the first reprimand and failure to comply with the trial court's order, his conduct could have been so labeled. However, his conduct certainly graduated to "misbehavior" within the meaning of R.C. 2705.01 after the *third* reprimand and appellant's failure to proceed with voir dire after the order to proceed was given by the trial court. Appellant's behavior thus fits snugly into the confines of R.C. 2705.01 and exemplifies each and every element necessary to find him in contempt beyond a reasonable doubt.

I am amazed that the same majority in *Heben* as in the case *sub judice* could affirm the contempt sanction against Heben for making "derogatory statements * * * to the court after it had Heben brought back into the courtroom," with no mention that Heben obstructed the administration of justice, *Heben, supra,* 74 Ohio App.3d at 573, 599 N.E.2d at 769; yet in the case *sub judice* the same majority finds Rossman's behavior not to be contemptuous, completely ignoring the statutory law and the case law based upon *stare decisis.* I am truly astounded.

A review of the record in the case *sub judice* leads to the inescapable conclusion that the trial court's finding of contempt was justified under the circumstances. Therefore, appellant's assignment of error should be overruled. I would affirm the judgment of the trial court finding appellant Alan Rossman in contempt of court.