The STATE of Ohio

v.

SCHIEWE; Mayberry, Pros. Atty., Appellant.

[Cite as *State v. Schiewe* (1996), 110 Ohio App.3d 170.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–95–068.

Decided March 29, 1996.

*Raymond C. Fischer,* Assistant Prosecuting Attorney; *William M. Connelly* and *Kevin E. Joyce,* for appellant.

*Max E. Rayle,* for appellee.

*Per Curiam.*

This is an accelerated appeal from a judgment of the Wood County Court of Common Pleas which found appellant, Alan R. Mayberry, Wood County Prosecuting Attorney, in direct contempt of court. Appellant sets forth the following two assignments of error:

"First Assignment of Error

"The actions of contemnor-appellant Alan R. Mayberry, Wood County Prosecuting Attorney, were not contempt of court, and the trial court abused its discretion in so finding.

"Second Assignment of Error

"The imposition of punishment for direct contempt of court thirty-three days after the finding of contempt violates both the statutory requirement as well as the inherent power of the court to summarily punish a person guilty of such alleged direct contempt."

The facts relevant to this appeal are as follows. While prosecuting a case on behalf of the state of Ohio, appellant was held in contempt of court by the trial judge when the trial judge held that appellant had intentionally violated a previous order against repetitious and cumulative testimony of police officers who had interviewed the defendant.[1] After the conclusion of the trial, a penalty

---

1. The following are the relevant portions of the trial transcript.

[DIRECT EXAMINATION OF ONE POLICE OFFICER BY APPELLANT]
"* * *
"Q: Tell us what happened.
"A: Sergeant Conner basically advised her what our investigation was about.
"Q: What did he say?
"A: He said we were—
"[DEFENSE ATTORNEY]: Objection. Hearsay.
"[APPELLANT]: It's not being offered for the truth of what Detective Conner said, but for the elicited response from what occurred.
"THE COURT: Is Detective Conner going to testify?
"[APPELLANT]: He will be testifying. He will be subject to cross-examination.
"THE COURT: As long as we don't have any repetition, counsel. If you're going to go through it now, then I don't think we ought to go through it again. One or the other, I don't care which.
"[APPELLANT]: May we approach the bench, Your Honor?
"(Discussion held out of the hearing of the Jury.)
"[APPELLANT]: Your Honor, obviously I don't have an intent to needlessly waste the Court's time, but I think it's critical when the Defendant makes statements in front of four officers that the victim was fine when she left her and reactions when shown the pictures of how, in fact, she is. I'm not going to belabor—
"* * *
"[APPELLANT]: It's not extensive, Your Honor. She said she was assaulted, here's what she looks like, and the Defendant's reaction. That's basically what it is. And I do intend, and I hope the Court will reconsider allowing me to do that. It's not extensive, but it's a critical part of the evidence in this case.
"* * *
"THE COURT: I think it was cumulative. I think, however, if there's any rebuttal or any testimony from the Defense to the contrary, then bring rebuttal evidence back."
[DIRECT EXAMINATION OF SECOND POLICE OFFICER BY APPELLANT]
"Q: The Defendant told you that she called [the victim]?
"A: Correct.
"Q: And scheduled an appointment to borrow money?
"A: Yes.
"Q: All right. What else did she say?
"THE COURT: Counsel, we've already gone into this at side bar.
"[APPELLANT]: Your Honor, this is the detective in charge of the investigation.
"THE COURT: I understand that, counsel, but he's repeating word for word what we've already had testimony on, and I told counsel we weren't going to have that again.
"[APPELLANT]: Your Honor, could we approach the bench?
"(Side bar discussion held out of the hearing of the Jury.)
"[APPELLANT]: Your Honor, I would object for the Record. This is critical testimony to the State's case, the State having the burden in [sic] proof beyond a reasonable doubt. * * *
"* * *
"THE COURT: Counsel, you have intentionally violated what I told you and what we're going to do. You've intentionally violated what I told you not to do.
"[APPELLANT]: Your Honor, I don't understand the Court's—
"THE COURT: You understood my ruling. I told you what the ruling was. We weren't going to have this repeated. Very clear. If we want to read it back, we will.
"[APPELLANT]: I would ask if the Court is sticking to this ruling that they [sic] permit only one character witness from the Defendant then and that they [sic] permit me to proffer this witness's testimony.
"THE COURT: I told you I would allow you to proffer it; not to give it, to proffer it. * * *
(Conclusion of side bar discussion.)"
[CONTINUED DIRECT EXAMINATION]
"[BY APPELLANT]:

hearing was conducted, which resulted in the imposition of a $100 fine. This appeal was timely filed.

■ The law is settled in Ohio that the power of the court to determine contempt is inherent, *Zakany v. Zakany* (1984), 9 Ohio St.3d 192, 9 OBR 505, 459 N.E.2d 870, and within its sound discretion, *State v. Christon* (1990), 68 Ohio App.3d 471, 589 N.E.2d 53; *Hughes v. Hughes* (1991), 72 Ohio App.3d 286, 594 N.E.2d 653. However, to uphold a contempt, the record must affirmatively show that the conduct constituted an imminent threat to the administration of justice. *State v. Conliff* (1978), 61 Ohio App.2d 185, 15 O.O.3d 309, 401 N.E.2d 469. To constitute contempt, the alleged misbehavior must require immediate punishment to preserve the court's authority, take place in the presence of the judge and obstruct the administration of justice by delaying, hindering or influencing a pending case. *In re Lands* (1946), 146 Ohio St. 589, 33 O.O. 80, 67 N.E.2d 433; *State v. Treon* (App.1963), 91 Ohio Law Abs. 229, 240, 188 N.E.2d 308, 315.

■ Because the fine was to punish appellant, the contempt was criminal. *State v. Kilbane* (1980), 61 Ohio St.2d 201, 15 O.O.3d 221, 400 N.E.2d 386. To be found in direct criminal contempt of court, a person must be proven guilty beyond a reasonable doubt. *Brown v. Executive 200, Inc.* (1980), 64 Ohio St.2d 250, 251, 18 O.O.3d 446, 447, 416 N.E.2d 610, 611–612. "[A]n appellate court reviewing a conviction for contempt may *not* assume, in the absence of record evidence to the contrary, that the action of the lower court was correct and lawful." (Emphasis *sic.*) *State v. Treon* (App.1963), 91 Ohio Law Abs. at 241–242, 188 N.E.2d at 316.

Therefore, the issue for this court to determine is whether the record affirmatively shows that appellant's conduct obstructed the administration of justice and required immediate punishment to preserve the authority of the court. Such a determination requires this court to weigh the duty that appellant, as a prosecu-

---

"Q: Detective Conner, following your conversation with the Defendant, would you say that the Defendant has continued to be the only suspect in this case?

"A: Yes.

"[APPELLANT]: Your Honor, I have to approach the bench. I'm not clear on the Court's limitation.

"THE COURT: Do not discuss this case with anyone else. Do not allow anyone to discuss it in your presence. Do not form or express an opinion until it is finally submitted to you. Take the Jury out.

"(Jury removed from the courtroom at 3:55 p.m.)

"THE COURT: Mr. Conner, do you want to wait out in the hall, please?

"THE WITNESS: Sure, Your Honor.

"THE COURT: The Court clearly told you, counsel, we were not going to hear constant repetition of the same testimony over and over. So far Mr. Conner's testimony has been exactly that. I also told you that there would not be a repetition of Mr. Conner's testimony on the hearing of the Defendant's statements. And you have intentionally violated the Court's order, and I'm finding you in contempt of this Court. * * * "

tor, owes to his client, the state, against the duty that appellant owes to the trial court.

After a thorough review of Ohio case law, this court has not found a case in which a prosecutor was held in criminal contempt under similar facts and circumstances.[2] In numerous cases, appellate courts have reversed judgments of criminal contempt because of consideration of an attorney's professional responsibilities to his/her client. In *In re Sherlock* (1987), 37 Ohio App.3d 204, 525 N.E.2d 512, the appellate court reversed a contempt judgment, concluding that an attorney should not have been required to violate her duty to her client as the price of avoiding punishment of contempt. In paragraph two of the syllabus, the court stated:

"Where a trial court denies a continuance in a criminal trial and, as a consequence, defense counsel refuses to participate in the trial for fear that the defendant would receive ineffective assistance of counsel and that counsel would be in violation of DR 6–101(A)(2) and 7–101(A)(3), the court may commit error under the circumstances of the particular case in finding defense counsel in contempt and in imposing a fine."

In *State v. Gasen* (1976), 48 Ohio App.2d 191, 2 O.O.3d 156, 356 N.E.2d 505, the trial court summarily appointed two attorneys to represent indigent defendants whom the trial court knew were already represented by competent counsel; the appointed counsel were unprepared to offer effective representation. The trial court held the appointed counsel in contempt of court for refusal to represent the defendants. The appellate court stated:

---

**2.** All of the following cases involved prosecuting attorneys: In *In re Gilbert* (Dec. 16, 1993), Cuyahoga App. No. 64299, unreported, 1993 WL 526788, the appellate court reversed a judgment of criminal contempt against a prosecutor whom the trial court held had exceeded the parameters on cross-examination on the grounds that the trial court's order was ambiguous. In *In re McGinty* (1986), 30 Ohio App.3d 219, 30 OBR 377, 507 N.E.2d 441, paragraph one of the syllabus, the appellate court affirmed a judgment of criminal contempt against an assistant county prosecutor for "(1) intruding into defense counsel's private conversation with his witness inside a conference room adjacent to the courtroom, (2) accusing defense counsel of having the witness arrested, thereby attempting to create hostility in the witness against defense counsel, (3) interfering with the defendant's right to subpoena witnesses, and (4) intimidating defense counsel so as to interfere with the defendant's right to effective assistance of counsel." In *State v. Khong* (1985), 29 Ohio App.3d 19, 29 OBR 20, 502 N.E.2d 682, the appellate court affirmed a judgment of criminal contempt against an assistant county prosecutor for intentionally electing to disobey a court order to disclose and deliver to the defense attorney exculpatory evidence. See, also, *Cuyahoga Cty. Bar Assn. v. Gerstenslager* (1989), 45 Ohio St.3d 88, 543 N.E.2d 491 (public reprimand of the same prosecutor for violation of DR 7–103[B] [duty to make timely disclosures to defendant of evidence that tends to negate the guilt of the accused] and DR 1–102[A][5] [engaging in conduct that is prejudicial to the administration of justice]).

"We hold that the trial court erred as a matter of law in refusing to recognize the appellants' responsibilities under the Code of Professional Responsibility and conclude accordingly that the finding of contempt rendered below is contrary to law. Such finding being contrary to law, it is the order of this court that the judgment of the Hamilton County Municipal Court be reversed and the appellants discharged herewith." 48 Ohio App.2d at 195–196, 2 O.O.3d at 158–159, 356 N.E.2d at 508.

In *In re Contempt of Rossman* (1992), 82 Ohio App.3d 730, 734, 613 N.E.2d 241, 243–244, the appellate court reversed a judgment of criminal contempt and stated:

"The facts of this case are more similar to the facts of *Saltzman* [*State v. Saltzman* (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported] where contempt was reversed, than to *Heben* [*Cleveland v. Heben* (1991), 74 Ohio App.3d 568, 599 N.E.2d 766], *McGinty* [*In re McGinty* (1986), 30 Ohio App.3d 219, 30 OBR 377, 507 N.E.2d 441], or *Wilson* [*State v. Wilson* (1972), 30 Ohio St.2d 312, 59 O.O.2d 379, 285 N.E.2d 38] where contempts were affirmed. In this case, the court objected to a question posed by Rossman to an individual juror, which was the same question which had been posed by the judge to the jurors as a group. Rossman subsequently explained that the question posed to the group was not sufficient for him to determine individual biases and to exercise his preemptory challenges.

"Although the judge characterized Rossman's statements as argument, the record reflects that Rossman's conduct was neither disrespectful nor disruptive, and that his intention was to protect his client's interests by making objections on the record. His statements consisted of courteous requests to preserve objections or have a sidebar conference. The record does not reflect that he impugned the judge or the judicial process, that he made a scene, as in *Heben* and *Wilson*, or that he intended to delay the proceedings. The record creates reasonable doubt that appellant's conduct obstructed the administration of justice. Appellant's assignment of error is sustained."

In *State v. Saltzman* (Oct. 9, 1980), Cuyahoga App. Nos. 41863 and 41864, unreported, two public defenders had been held in direct contempt of court. The appellate court stated:

"In the case of both attorneys, it appears from the transcript of the pretrial proceedings that they showed no disrespect to the Court or hindered the administration of justice. Hubbard and Saltzman were trying only to protect the interests of their client.

"In connection with the voir dire of the prospective jurors, it is true that Saltzman extensively questioned them as to their willingness to believe police

officers. Credibility of police officers was an issue in Roger Widner's case and a subject upon which all counsel involved in the voir dire questioned the jurors. The record fails to reveal Saltzman was seeking to condition the jurors not to believe police officers, was cross-examining them or annoyed them by standing too close to the jury rail as reported in the trial judge's statement of facts. Nor is the subject of the bench conferences held during 'voir dire' in the record.

"Hubbard sought to include in the record the reasons for his request for a mistrial and his objections to having to defend Roger Widner himself without Saltzman's assistance when so ordered by the Court. The Court did not allow Hubbard to make a record; the dialogue between Hubbard and the trial judge showed no disrespect for the Court. DR 7–106(A) of the Code of Professional Responsibility provides in pertinent part: 'A lawyer shall not disregard * * * a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but he may take appropriate steps in good faith to test the validity of such rule or ruling.'

"Without being allowed to place in the record how his client was prejudiced it would be difficult, if not impossible, to test the validity of the rulings.

"After Hubbard was found in contempt of court, Saltzman was elevated to the position of sole defense counsel. Her request to make a phone call and statement that she could not proceed similarly did not demonstrate any disrespect for the Court. Rather she was only attempting to protect her client's interest as she apparently was prepared only to have a limited role in her client's defense and was not prepared to conduct the entire defense without any forewarning. See *State v. Gasen* (1976), 48 Ohio App.2d 191 [2 O.O.3d 156, 356 N.E.2d 505].

"The situation here is not analogous to that in *State v. Wilson* (1972), 30 Ohio St.2d 312 [59 O.O.2d 379, 285 N.E.2d 38], relied upon by appellee. In that case the attorney unnecessarily repeated objections, requests for examination and for the maintenance of the record when the Court had not disallowed maintenance of the record; further, the attorney constantly disregarded the Court's orders to sit down. Such conduct amounted to disrespect for the Court, disruption of quiet and order in conduct of the Court's business.

"We find no such disrespect in Hubbard's and Saltzman's action and no disruption of the pre-trial proceedings. Consequently, the trial court's finding of contempt of court was unwarranted in the case of both attorneys."

These cases demonstrate that, under certain circumstances, appellate courts have reversed judgments of criminal contempt because of consideration of the professional responsibilities owed to his or her client by an attorney. Although these cases involved defense attorneys, there is no reason to apply a different standard to a prosecuting attorney.

██ As a prosecutor, appellant had a professional responsibility to the state to prepare and present sufficient evidence to sustain the state's burden of proof beyond a reasonable doubt. A judgment of acquittal will result if insufficient evidence is presented to sustain the state's burden. A judgment of acquittal is a final verdict within the meaning of R.C. 2945.67(A) and is not appealable by the state as a matter of right or by leave to appeal pursuant to that statute.[3] *State v. Keeton* (1985), 18 Ohio St.3d 379, 18 OBR 434, 481 N.E.2d 629, paragraph two of the syllabus; *State ex rel. Yates v. Montgomery Cty. Court of Appeals* (1987), 32 Ohio St.3d 30, 512 N.E.2d 343, syllabus. Thus, the trial court's order prohibiting "repetitious testimony" placed appellant in an untenable position: he either had to violate his professional responsibility to his client, the state, and present a case which, in his professional judgment and evaluation, was less than sufficient to sustain its burden of proof, or violate his duty and responsibility, as an officer of the court, to obey its order prohibiting "repetitious testimony." As the court stated in *In re Sherlock*, 37 Ohio App.3d at 213, 525 N.E.2d at 520–521, an attorney should not be required to violate his duty to his client as the price of avoiding punishment of contempt.

This court finds that the record does not reflect that appellant impugned the judge or the judicial process, that he was disrespectful to the court, or that he intended to delay the proceedings. The record creates reasonable doubt that appellant's conduct obstructed the administration of justice. Consequently, under the circumstances of this case, the trial court's finding of contempt of court was unwarranted. Accordingly, appellant's first assignment of error is found well taken. The second assignment of error is rendered moot as a consequence of this court's ruling on the first assignment of error and is, therefore, not well taken. The judgment of contempt is reversed. Costs of this appeal are assessed to appellee.

Although we have reversed the judgment of contempt under the particular circumstances of this case, attorneys should heed the following admonition set forth in *State v. Gasen* 48 Ohio App.2d at 195–196, 2 O.O.3d at 158–159, 356 N.E.2d at 508, fn., with which this court agrees:

"[A] caveat is in order: this Court should not be understood as holding that an attorney may necessarily avoid the consequences of a refusal to obey a direct

---

**3.** R.C. 2545.67(A) states:

"A prosecuting attorney * * * may appeal as a matter of right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to sections 2953.21 to 2953.24 of the Revised Code, and may appeal by leave of the court to which the appeal is taken any other decision, *except the final verdict*, of the trial court in a criminal case * * *." (Emphasis added.)

order of a trial court simply because his understanding of his personal or professional duties may differ from that of the court. *State, ex rel. Shroder, v. Shay,* 3 N.P. (N.S.) 657 [16 Ohio Dec. 446]. *An officer of the court must always be held to disobey such instructions at his peril, and must understand that his justification for doing so will be subjected to the closest scrutiny and will be sustained only where it may be fairly. concluded that no other course was reasonably available to him, as here.* Where, for example, complete relief from unjustified, unreasonable, or illegal orders may be accorded the aggrieved parties (whether counsel, his clients, or both) upon direct appeal, we take it that the burden would be heavy indeed to sustain a refusal to obey.

*"The overriding obligation of the trial judge to superintend the business of his court in a lawful and expeditious manner, and to control and direct the officers of the court toward the accomplishment of that end, requires that he be given substantial discretion in the governance of proceedings before him,* a discretion which is always subject to review for prejudicial abuse. With the existing pressures of time and numbers at every level of courts, it is difficult to conceive that the system may be made to function under any other rule. *Our discussion today should not be taken to represent any retreat from adherence to that principle."* (Emphasis added.)

*Judgment reversed.*

HANDWORK, GLASSER and SHERCK, JJ., concur.